Elias COVINGTON, Petitioner,

v.

DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.

Appeal No. 84–976.

United States Court of Appeals, Federal Circuit.

Dec. 18, 1984.

John I. Heise, Jr., Heise, Jorgensen & Stefanellie, P.C., Silver Spring, Md., argued for petitioner. With him on the brief was John P. Rhody, Jr., Silver Spring, Md., of counsel.

M. Susan Burnett, Dept. of Justice, Washington, D.C., argued for respondent. Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Robert A. Reutershan and Lynn J. Bush, Washington, D.C., Dept. of Justice, were on the brief for appellee. Florence Asnes, Dept. of Health and Human Services, Rockville, of counsel.

Before MILLER, Circuit Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

This is an appeal from a final decision of the Merit Systems Protection Board (Board), Case No. DC03518210591. The issue is whether petitioner's retirement from federal service was deemed voluntary or involuntary, in the context of a reduction-in-force action. The Board held petitioner's

retirement to be voluntary and therefore dismissed his appeal challenging the agency's action. For the reasons that follow, we reverse the decision of the Board and remand for further proceedings.

### I.

Petitioner Elias Covington is a former GS–13 grade employee of the Community Services Administration (CSA). Covington, who held a 5-point veteran's preference, was employed by CSA as a General Supply Specialist with a service computation date of August 24, 1942.

On July 30, 1981 CSA distributed a general reduction-in-force (RIF) notice which informed employees that the President had requested no funding for fiscal year 1982, that CSA might be terminated, and that all CSA positions might be abolished as of September 30, 1981. On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub.L. No. 97–35, 95 Stat. 358 (1981) was enacted. Title VI of this Act terminated CSA as of October 1, 1981.

On August 21, 1981 Covington received a specific RIF notice informing him that CSA would not exist after September 30, 1981, that his position would be abolished, and that he would be separated due to the RIF effective September 30, 1981. The notice advised Covington that "[b]ecause all positions in your competitive area are being abolished as of September 30, 1981, you have no right of assignment to another position." Since Covington was eligible for an immediate retirement annuity, information concerning benefits of discontinued service retirement was included in the notice. The notice advised Covington that he could appeal the RIF action to the MSPB if he was of the opinion that his rights had been violated.

On September 12, 1981 the CSA union filed suit in the United States District Court for the District of Columbia, alleging that CSA employees had rights under the Veterans Preference Act, 5 U.S.C. § 3503,[1] to be transferred to the Department of Health and Human Services (HHS) to perform certain activities authorized by OBRA. The union also moved for a preliminary injunction to prevent HHS from filling certain positions under OBRA without first effecting the transfer of CSA employees in accordance with the Veterans Preference Act.

Effective September 30, 1981, Covington retired from federal service for reason of "Abolishment of Agency". The agency treated his retirement as involuntary and established his eligibility for discontinued service retirement. All CSA employees who had not resigned or retired were separated due to RIF on September 30, 1981.

On October 16, 1981 District Judge Penn acted on the union's complaint and permanently enjoined HHS from staffing positions in the Office of Community Services (OCS), CSA's successor, without giving the former CSA employees Veterans Preference rights. *Nat'l Council for CSA Locals, American Federation of Government Employees (AFGE), AFL–CIO v. Schweiker,* 526 F.Supp. 861 (D.D.C.1981). The district court did not decide whether a transfer of function from CSA to HHS had occurred, nor did it adjudicate the rights of former CSA employees pursuant to 5 U.S.C. § 3503, holding that the former CSA employees had not exhausted their administrative remedies with regard to questions of employee rights pursuant to RIF procedures. 526 F.Supp. at 864–65.

On November 5, 1981 Secretary Schweiker determined that a transfer of function from CSA had occurred with respect to

---

1. 5 U.S.C. § 3503 (1982) provides:

    (a) When a function is transferred from one agency to another each preference eligible employed in the function shall be transferred to the receiving agency for employment in a position for which he is qualified before the receiving agency may make an appointment from another source to that position.

    (b) When one agency is replaced by another, each preference eligible employed in the agency to be replaced shall be transferred to the replacing agency for employment in a position for which he is qualified before the replacing agency may make an appointment from another source to that position.

certain activities of OCS. As a result, approximately 180 former CSA employees were appointed to OCS positions retroactively to October 1, 1981. These persons received back pay and all other benefits associated with their retroactive appointments.

On December 5, 1981, as part of the transfer process, HHS officials offered Covington a position as a GS–5 clerk-typist with GS–13 saved pay for two years. Covington declined the offer because his experience was as a property officer.

As of December 21, 1981, approximately 250 former CSA employees had appealed their separation by RIF to the Board. On February 12, 1982 the Board consolidated these appeals and assigned them to the Office of Administrative Law Judges for consideration of common issues of law and fact which were national in scope. On February 15, 1982 Covington appealed the failure of HHS to transfer him to a position identified with a function that was transferred from CSA, and requested consolidation of his appeal with the others. He requested a hearing and stated that he had retired involuntarily.

On August 20, 1982 MSPB Chief Administrative Law Judge McCarthy found that a transfer of function had occurred so that certain former CSA employees had the right to compete for positions at OCS. *Certain Former Community Services Administration Employees v. Department of Health and Human Services*, MSPB Partial Initial Decision, Decision No. HQ12008110063 (Aug. 20, 1982). Both parties petitioned the Board to review this decision.

While these appeals were pending, on July 15, 1983 HHS moved to dismiss Covington's appeal, arguing that he had retired prior to his separation by RIF and that the Board therefore lacked jurisdiction to hear his appeal. In response to an order to show cause, Covington asserted that his appeal satisfied the requirements of 5 C.F.R. § 351.901, that he had been terminated by a RIF action, and that his retirement was involuntary and not of his own

choosing. He provided copies of his RIF notice, his notice of appeal, and his SF 50 involuntary retirement form. This form appears to have been filled out by the agency, is signed by Mr. Robert Davis on behalf of the agency, and states "INVOLUNTARY RETIREMENT, RIF NOTICE DTD 08–21–81" in Block 30 as the reason for Covington's separation. Covington also included a copy of a letter dated July 21, 1983 from the former Director of Personnel for CSA which stated that certain other former CSA employees "may have taken advantage of early retirement, however none of you voluntarily resigned your position" and that "[a]ny records to the contrary are in error."

On August 15, 1983 the presiding official dismissed Covington's appeal for lack of jurisdiction. *Covington v. Department of Health and Human Services*, Case No. DC3518210591 (Aug. 15, 1983). Observing that a retirement is normally a voluntary action which is not appealable to the Board, the presiding official framed the issue to be whether Covington had presented a non-frivolous allegation that his retirement was wrongfully coerced by the agency. Although the presiding official determined that Covington's "retirement was involuntary, for purposes of [establishing eligibility for discontinued service] retirement", that fact did not "amount to an allegation that his retirement decision was wrongfully extracted by deception or coercive agency action" which would render his retirement involuntary for purposes of establishing Board jurisdiction. *Id.* at 3.

The presiding official also found that the statement in the RIF notice that no jobs would be available was harmless error which did not mislead Covington because the union had filed a court action prior to the effective date of his retirement. The official concluded that "[w]hile it may have behooved the agency to be more specific so as to inform petitioner that he could retire *or* be separated by RIF, I do not find the agency's specific notice presented such confusing or misleading information as might

work to bring this appeal within the Board's jurisdiction." *Id.*

In his petition to the full Board to review the presiding official's decision, Covington argued that *Gonzalez v. Department of Transportation,* 701 F.2d 36 (5th Cir.1983), cited but not followed by the presiding official, required reversal by the Board because he had not been informed that by choosing to retire he would forfeit his right to challenge the agency's action. On January 19, 1984 the Board denied Covington's petition for review; he then appealed to this court.

On June 18, 1984, the Board issued its opinion on review of the ALJ's partial decision of August 20, 1982. The Board's opinion, issued June 18, 1984, modified the decision of the ALJ but agreed that the agency had failed to match the continuing functions with those individual employees who had been identified with those functions prior to the transfer. Accordingly, the petitioners were entitled to continue their individual appeals at the local level:

> The effects of this agency error as it relates to each appellant have yet to be determined. Upon remand, each individual appellant must be afforded an opportunity to present with some degree of specificity, evidence which tends to establish that he was denied retention to which he was otherwise entitled under 5 C.F.R. 351.303. *Debold v. Department of the Navy,* 9 MSPB 95 (1982).
>
> It is therefore incumbent upon each appellant to assert that he was identified with a continuing function that is now being performed by OCS. *Jackson v. National Transportation Safety Board,* MSPB Docket No. DC03518110850, (January 9, 1984). In addition, the appellant must identify a position or positions for which he was qualified that have been assigned to other employees with less retention standing or positions occupied by employees who had no initial entitlement to transfer. *Jackson,* supra, at 4. Once these factors have been established by the appellant, the agency may refute the contentions made or prove that that

appellant's rights have not been abridged by showing that notwithstanding the evidence, the appellant would not, in any event, have been retained. *Speaker v. Department of Education,* 11 MSPB 430 (1982). Should an individual appellant present evidence that tends to establish that he was denied retention to which he was otherwise entitled under 5 C.F.R. 351.303 and the agency is unable or unwilling to refute such evidence by showing it to be untrue or that his retention standing would not have provided such benefit, the appellant would prevail.

*Certain Former Community Services Administration Employees v. Department of Health and Human Services,* MSPB Docket No. ATO3518210251 at 21–22 (June 18, 1984) (footnote omitted).

## II.

■ This court's review of decisions of the Merit Systems Protection Board is narrowly defined by statute. The Board's decision must be affirmed unless it is found to be:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1982); *Hayes v. Department of the Navy,* 727 F.2d 1535 (Fed.Cir. 1984); *Phillips v. United States Postal Service,* 695 F.2d 1389 (Fed.Cir.1982).

■ Absent evidence to the contrary, retirement is presumed to be a voluntary act. *Christie v. United States,* 518 F.2d 584, 587, 207 Ct.Cl. 333, 338 (1975); Federal Personnel Manual (FPM) Supp. 752–1, subchapter S1–2(a)(1). Voluntary action initiated by the employee precludes a subsequent appeal to the MSPB. 5 C.F.R. § 752.401(c)(3) (1984).

■ To determine whether a retirement is voluntary, a court must examine "the surrounding circumstances to test the abili-

ty of the employee to exercise free choice". *Scharf v. Department of the Air Force,* 710 F.2d 1572, 1574 (Fed.Cir.1983) (citing *Perlman v. United States,* 490 F.2d 928, 933, 203 Ct.Cl. 397, 407–08 (1974)). The fact that an employee is faced with an inherently unpleasant situation or that his choice is limited to two unpleasant alternatives does not make an employee's decision any less voluntary. *Taylor v. United States,* 591 F.2d 688, 692, 219 Ct.Cl. 86, 92 (1979); FPM Supp. 752–1, subchapter S1–2a(3). But the decision must ultimately be the employee's decision, not the government's; whether the employee made an informed choice is the touchstone of our analysis.

■ The presiding official found that Covington made no allegation that his retirement had been involuntarily extracted through coercion or duress. However, a retirement need not be "coerced" to be involuntary. A resignation or retirement is involuntary if it is obtained by agency misinformation or deception. *Scharf,* 710 F.2d at 1574; FPM Supp. 752–1, subchapter S1–2(a)(1). *Scharf* held that an objective test applies to such situations and that a court in applying this test will not inquire into the "subjective perceptions of the employee" or "the subjective intentions of the agency". 710 F.2d at 1575. Unlike a retirement which is induced through duress, there is no requirement that an employee be intentionally deceived about his employment options, it being sufficient that "the employee shows that a reasonable person would have been misled by the agency's statements." *Id.* The misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary.

■ We hold that the August 21, 1981 notice was misleading and erroneous in material ways. The notice stated, without qualification, that the agency was going to be abolished and that Covington had no right of assignment to another position. A person in this situation could reasonably rely upon the government's statement that he would have no opportunity to be reassigned, and Covington did so rely. At no time prior to Covington's discontinued service retirement did the agency correct its misinformation. Subsequent events, some of which transpired only weeks after Covington's separation, demonstrated that several functions of CSA were transferred to another agency. Even the presiding official acknowledged that the RIF notice was in error.

The agency's erroneous representations are not excused by the fact that the CSA union challenged them in court prior to the date that the agency was abolished. It is not material whether Covington had knowledge of that suit prior to his decision to accept discontinued service retirement. The mere initiation of litigation is not such evidence of eventual success as to have required Covington to stake his sustenance on its outcome.

We agree with Covington that the events of involuntary retirement and separation by RIF are not necessarily mutually exclusive. As FPM Supp. 831–1, Subchapter S11–2(a) indicates, discontinued service retirement can be obtained upon "involuntary separation", defined as "any separation against the will and without the consent of the employee ...." The manual states that a reduction in force, such as the abolishment of position, is an example of this type of separation. Block 12 of Covington's SF 50 described the nature of the action as being "retirement-abolishment of agency" and block 30 lists the reason for the separation as being "involuntary retirement" on account of the RIF notice dated August 21, 1981. The agency has never denied that Covington was eligible for discontinued service retirement. We find no basis for the agency's inconsistent position that petitioner was not separated due to RIF or, in view of the contemporaneous statements in the agency's own documents, that his retirement was other than involuntary. Accordingly, we hold that Covington's retirement was involuntary.

### III.

Covington also asserted that his rights had not been correctly explained to him at the time of the RIF. His RIF notice failed to state that his involuntary retirement might forfeit any rights that he would otherwise have in appealing the agency's RIF action. The agency limited Covington's choices between discontinued service retirement, on the one hand, and separation without severance pay and with reinstatement contingent upon a favorable outcome in a costly, time-consuming appeal. The law does permit such a hard choice, "a choice, as the poet says, between 'death and exile,' a choice between the 'guillotine and the hangman's noose,' a choice between 'Scylla and Charybdis' ...." *Christie*, 518 F.2d at 591, 207 Ct.Cl. at 345 (Skelton, J., dissenting).

■ But the law also requires that a choice between two alternatives, however unpleasant, must be understood by the employee and that such a decision be freely made. In this case, the agency was responsible for Covington's lack of an informed choice. A decision made "with blinders on", based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process. *Cf. Shubinsky v. United States*, 488 F.2d 1003, 1006, 203 Ct.Cl. 199, 204 (1973) (Government's misleading notice of preference-eligible rights and withholding of information concerning plaintiff's right to appeal adverse action entitles plaintiff to adjudication on the merits).

Since Covington was not informed that a transfer of function had occurred (and actually was informed to the contrary), he had no grounds to believe an appeal of his RIF action might be productive. The agency's additional failure to inform him that a retirement election would preclude a later appeal denied him the right to consider this fact in making his decision. Covington was given a Hobson's choice, that is to say no real choice at all.

■ Covington also asserts that he was improperly denied a hearing on the issue of the voluntariness of his retirement. The decision of the Fifth Circuit in *Gonzalez v. Department of Transportation*, 701 F.2d 36 (5th Cir.1983), is instructive on this point. In that case petitioner received a termination notice which indicated that she could appeal and also either resign or accept involuntary separation and still receive retirement pay. The Fifth Circuit held that the voluntariness of her resignation could not be presumed by virtue of her application for retirement pay, and that petitioner was entitled to a hearing on the issue of the voluntariness of her resignation:

Neither the initial reduction-in-force notice from the Agency, however, nor the subsequent letter from the Board requesting jurisdictional argument, informed her of her applicable rights. The Board's regulations furnished her do not show that a voluntary resignation waives the right to appeal the termination action of an agency-employer. Nor does the record indicate that Gonzalez was adequately informed, by the Agency or by the Board, of her applicable rights relative to voluntarily resigning and applying for discontinued employment retirement or, in the alternative, accepting involuntary separation and *also* applying for discontinued employment retirement. In the first instance, she would lose her right to appeal, and in the second, she would not. However, the notice to Gonzalez as a whole indicated that she could *both* appeal and *also* either resign or accept involuntary separation and still receive retirement pay.

*Id.* at 39.

As in *Gonzalez*, the presiding official in the present appeal issued a decision on the merits of the jurisdictional issue, based solely upon the pleadings and written submissions of the parties. This violated procedures required by law that guarantee an employee a hearing on the issue of involuntary retirement. *See Gratehouse v. United States*, 512 F.2d 1104, 1108, 206 Ct.Cl. 288, 296 (1975); *McCormack v. United States*, 204 Ct.Cl. 371, 373, 378 (1974). Precedent within the MSPB is also in accord. *See, e.g., Murray v. Defense Map-*

*ping Agency,* 1 MSPB 338 (January 17, 1980). We note that the government's own handbook for prosecuting MSPB appeals states that "[a]n appellant who makes a non-frivolous allegation of the involuntariness of a resignation/retirement is entitled, under *Spiegel v. Department of the Army,* 2 MSPB 307 (1980), to a hearing to resolve that issue." H. Ashner and W. Jackson, *Representing the Agency Before the United States Merit Systems Protection Board—A Handbook on MSPB Practice and Procedure* 29 (GPO May 1984).

The presiding official's summary disposition of Covington's appeal without a hearing, despite Covington's timely request, was a prejudicial violation of Covington's procedural rights. As we recently noted in *Callahan v. Dept. of the Navy,* 748 F.2d 1556 (Fed.Cir.1984), the hearing right was a central provision of the Civil Service Reform Act of 1978, and Congress has charged the Board with the job of protecting the procedural rights of federal employees.

### IV.

We hold that Covington's RIF notice was both inadequate and erroneous. As in *Gonzalez,* Covington's appeal should not be prejudiced by the agency's and the Board's failure to inform him of his applicable rights as required by statute and regulations. *See McCormack v. United States,* 204 Ct.Cl. 371, 378 (1974) (Government, after put on notice the plaintiff considered his resignation to be involuntary, must inform plaintiff of all administrative rights attaching to an involuntary resignation). These facts, coupled with the agency's erroneous statement that Covington had no right of assignment, are sufficient to establish, as a matter of law, that Covington's decision to retire was not voluntary. On remand, Covington is entitled to show at a hearing that he had been denied retention to which he was otherwise entitled under 5 C.F.R. § 351.303 (1984), in light of the Board's decision in *Certain Former Community Services Administration Employees v. Department of Health and Human*

*Services,* MSPB Docket No. ATO3518210251 (June 18, 1984). Accordingly, we reverse the decision of the MSPB and remand this case for proceedings consistent with this opinion.

REVERSED AND REMANDED.