FOURTH DIVISION
 DECEMBER 26, 1996

1--93--3108

EDWARD ALLEN, SIMEON T. ) Appeal from
BAMGBAIYE, ELMER BUSCH, ) the Circuit Court
JEWEL McLAURIN, CHARLES E. ) of Cook County
WALTON, and ROBIN E. )
WASHINGTON, JR., ) 
 )
 Plaintiffs-Appellants, )
 )
 v. )
 )
THE BOARD OF TRUSTEES OF )
COMMUNITY COLLEGE DISTRICT )
NO. 508; COOK COUNTY; )
REYNALDO GLOVER, and )
NELVIA BRADY, ) Honorable Edward
 ) C. Hofert, Judge
 Defendants-Appellees. ) Presiding.
 
 JUSTICE CERDA delivered the opinion of the court:

 Plaintiffs, Edward Allen, Simeon T. Bamgbaiye, Elmer Busch,
Jewel McLaurin, Charles E. Walton, and Robin E. Washington, Jr.,
appeal from the entry of summary judgment by the circuit court of
Cook County in favor of defendants, the Board of Trustees of
Community College District No. 508; Reynaldo Glover, chairman of
the Board; Nelvia Brady, chancellor of the City Colleges of
Chicago; and Cook County. Plaintiffs argue that their
resignations as tenured city-college teachers were involuntary
and that they were not afforded due process. We affirm.

 I. Facts
 Plaintiffs resigned after charges were made that they
awarded grades to students who were registered but who never
attended any classes. Plaintiffs' complaint alleged the
violation of their constitutional rights, including wrongful
discharge in violation of due process. 
 The following facts were established upon defendants filing
a motion for summary judgment. In 1988, defendants received a
letter from a Malcolm X College student charging that an
instructor attempted to extort money from students. Defendants
investigated whether instructors were properly adhering to the
attendance and grading procedures; instructors were required to
report which students were not in attendance. The report of the
investigation revealed that some of the instructors, including
three of the plaintiffs, were suspected of not reporting students
who did not attend classes and were also awarding grades to them. 
Phantom students were enrolled in classes for the 1989 spring
semester but never attended class. The college administrators
approved the plan to enroll persons who agreed they would never
attend classes at this college. 
 Of the 24 faculty teachers who had phantom students enrolled
in their classes, 16 truthfully reported students not attending
classes while all six plaintiffs awarded passing grades to the
phantom students. If an instructor does not have a sufficient
number of students to teach a class, the class is closed and the
instructor is not paid for teaching that class.
 On March 28, 1989, plaintiffs were served with written
notice that the chancellor was considering a recommendation that
they be dismissed for cause. The written notice advised
plaintiffs that an informal hearing would be held on March 31,
1989. The proposed charges detailed violations of school policy,
including plaintiffs' certifying the attendance of the phantom
students and giving them midterm grades.
 The chancellor directed that the findings about plaintiffs'
conduct be reported to the United States Attorney. Defendants'
representatives told plaintiffs' union representatives that
plaintiffs faced indictments and probable convictions under
federal law; that, if convicted, plaintiffs would forfeit all
their pension rights; and that plaintiffs should be told to give
up their right to a hearing on the charges, resign, and accept
voluntary retirement, which defendants were willing to extend in
exchange for prompt resignation and retirement. Dr. Judge
Watkins, Jr., vice president of the Cook County College Teachers
Union, repeated this information from defendants'
representatives. Plaintiffs contend that defendants requested
federal criminal action although defendants knew that plaintiffs
did not commit any federal crimes because defendants were careful
not to seek any federal funding based on the attendance of the
sham students. Plaintiffs did not talk to defendants or to any
member of the board of trustees of the college. 
 The union passed a resolution agreeing to provide plaintiffs
legal representation for "due process purposes" only. Watkins
advised plaintiffs that they should seek criminal attorneys. 
Watkins contacted a union attorney, Gilbert Feldman, who met with
each plaintiff. Plaintiffs appeared at the scheduled hearings
with Feldman and asked for rescheduling until April 4, 1989. The
requests were granted. 
 On April 4, 1989, plaintiffs did not participate in the
hearings but instead submitted letters of resignation. 
Plaintiffs contend that they resigned and retired as a result of
the threat of federal prosecution, discharge, and loss of
pensions. 
 The trial court granted defendants' motion for summary
judgment. After the trial court denied plaintiffs' motion for
reconsideration, plaintiffs filed a notice of appeal.

 II. Discussion
 Plaintiffs first argue on appeal that they had a
constitutional right not to be discharged without due process of
law and that their resignations were involuntary because
defendants, with intent to extort involuntary resignations,
knowingly made the deliberate misrepresentation that plaintiffs
violated criminal laws. Plaintiffs further argue that their due
process rights were violated because threats caused them to be
dismissed without a hearing. Defendants do not dispute that
plaintiffs were entitled to due process but argue that the
resignations were voluntary. 
 A motion for summary judgment is to be granted if "the
pleadings, depositions, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law." 735 ILCS 5/2-1005 (West 1994). The
pleadings, depositions, admissions, and affidavits on file must
be construed against the movant and in favor of the opponent of
the motion. Jackson Jordan, Inc. v. Leydig, Voit & Mayer (1994),
158 Ill. 2d 240, 249, 633 N.E.2d 627. Summary judgment is a
drastic means of disposing of litigation, and so the right of the
moving party to obtain summary judgment must be clear and free of
doubt. Jackson, 158 Ill. 2d at 249. Where doubt exists as to
the right of summary judgment, the wiser judicial policy is to
permit resolution of the dispute by a trial. Jackson, 158 Ill.
2d at 249.
 Duress is measured by an objective, and not a subjective,
test. Illinois ex rel. Schoepf v. Board of Education of Morton
High Schools, District 201, 606 F. Supp. 385, 390 (N.D. Ill.
1985). Duress is a condition where one is induced by a wrongful
act or threat of another to make a contract under circumstances
that deprive one of the exercise of free will. Enslen v. Village
of Lombard, 128 Ill. App. 3d 531, 533, 470 N.E.2d 1188 (1984). A
resignation that is given to avoid a dismissal that has at least
a prima facie disputed basis is not considered to be given under
duress. Enslen, 128 Ill. App. 3d at 533 (complaint was properly
dismissed under allegations that petitioner resigned under duress
in response to fire chief's threats to dismiss him for inhaling
nitrous oxide while on duty and to tell newspapers that
petitioner was alcoholic). A resignation can be voluntary if it
is submitted to avoid criminal prosecution. Pitt v. United
States, 420 F.2d 1028, 1032-33 (Ct. Cl. 1970). 
 There was evidence that the college issued written
directives to the faculty cautioning them that they must not
count persons as their students unless they actually attended
classes. Defendants had school records showing that plaintiffs
counted the phantom persons as their students even though the
persons never attended classes, and in addition, plaintiffs gave
the persons passing grades. Defendants therefore presented
sufficient evidence, which was not controverted, that they could
prove that they had lawful grounds to discharge plaintiffs. 
Because defendants had a prima facie basis to discharge
plaintiffs, their resignations given to avoid dismissal cannot be
considered to have been given under duress. Enslen, 128 Ill.
App. 3d at 533.
 Plaintiffs claim that the college board of trustees, its
chairman, and its chancellor falsely stated that plaintiffs'
midterm reports listing the names of sham students had
constituted federal crimes and that each plaintiff would suffer
conviction, discharge, and pension forfeiture. Plaintiffs claim
that because defendants did not request federal or state funds
for the sham students, defendants knew that plaintiffs could not
be convicted of any federal crimes. Plaintiffs claim that
because of material falsehood and threats of federal prosecution,
their resignations were extorted and their due process rights
were violated by defendants. 
 There is no evidence that defendants falsely held their
belief that plaintiffs might have committed crimes and that
defendants acted to deceive plaintiffs. Defendants had evidence
that plaintiffs were paid for teaching students who never
attended classes but nevertheless were given passing grades. 
Robert Eygenhuysen stated in his affidavit that one of the
reasons plaintiffs gave grades to students who never attended
class was to enable plaintiffs to teach classes that would have
been closed because of the failure to meet the college's minimal
attendance standards. But for the false certification, the
instructors would not have received payment, and therefore they
committed a crime.
 In addition, defendants had the prior investigation report,
which revealed the deceitful conduct on the part of several of
plaintiffs that preceded the plan to enroll phantom students. 
The allegations of the prior report did involve the possible
misuse of government funds for teaching students who never
attended classes. Each instructor who falsified attendance and
grade records might have committed crimes for which they could
have been prosecuted. Defendants had a right to inform the
federal authorities of all the information they had gathered
regarding plaintiffs' misconduct. Defendants voiced their
opinion to the teachers' union representative that criminal
indictments and convictions of plaintiffs would be forthcoming. 
Even if defendants' belief that federal crimes were committed was
incorrect, we hold that as a matter of law plaintiffs were not
coerced into resigning but voluntarily resigned. Defendants had
an indisputable basis for bringing dismissal proceedings, and
plaintiffs were given a choice between resigning or contesting
the charges. 
 In contrast to the employees in cases cited by plaintiffs
that involved misrepresentations as to employee rights (Scharf v.
Department of the Air Force, 710 F.2d 1572 (D.C. Cir. 1983);
Covington v. Department of Health and Human Services, 750 F.2d
937 (D.C. Cir. 1984)), it was unreasonable for plaintiffs to rely
on defendants' statements that plaintiffs violated criminal laws. 
Plaintiffs instead should have obtained the advice of criminal
attorneys on whether their conduct possibly violated criminal
laws. Furthermore, whether plaintiffs' deceitful conduct was
criminal is not a matter of fact. We believe that the opinion
held by defendants regarding the deceitful conduct of defendants
cannot be considered a misrepresentation (Snelten v. Schmidt
Implement Co., 269 Ill. App. 3d 988, 996, 647 N.E.2d 1071 (1995)
(one element of fraudulent misrepresentation is a false statement
of material fact)). 
 Due process for a tenured public employee requires oral or
written notice of the charges, an explanation of the employer's
evidence, and an opportunity to present her side of the story. 
Cleveland Board of Education v. Loudermill, 470 U.S. 532, 546, 84
L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495 (1985). The Loudermill
court pointed out the due process requirements in discharging a
tenured public employee:
 "The essential requirements of due process,
 and all that respondents seek or the Court of
 Appeals required, are notice and an
 opportunity to respond. The opportunity to
 present reasons, either in person or in
 writing, why proposed action should not be
 taken is a fundamental due process
 requirement. *** The tenured public employee
 is entitled to oral or written notice of the
 charges against him, an explanation of the
 employer's evidence, and an opportunity to
 present his side of the story. *** To
 require more than this prior to termination
 would intrude to an unwarranted extent on the
 government's interest in quickly removing an
 unsatisfactory employee." Loudermill, 470
 U.S. at 546, 84 L. Ed. 2d at 506, 105 S. Ct.
 at 1495.
 Plaintiffs here received written notice that the chancellor
was considering a recommendation of dismissal. Plaintiffs also
received a copy of the proposed charges and a bill of particulars. 
Plaintiffs were given the opportunity to respond at a
predetermination hearing. Instead of proceeding with the hearing,
plaintiffs chose to resign. As we have found that plaintiffs were
not coerced into giving up the right to respond to the charges at
the hearing, plaintiffs were not deprived of due process. 
 Under federal civil rights law, every "person who, under
color of any statute, ordinance, regulation, custom, or usage of
any State *** subjects *** any *** person *** to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured. 42
U.S.C.A.  1983 (West 1994). Governing bodies and local
officials sued in their official capacities can be sued directly
under section 1983 where the action that is alleged to be
unconstitutional implements or executes a policy statement,
ordinance, regulation, or decision officially adopted or
promulgated by those whose edicts or acts may fairly be said to
represent official policy. Monell v. New York City Department of
Social Services, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 638, 98 S.
Ct. 2018, 2037-38 (1978). 
 In their complaint plaintiffs allege they were injured
because of unconstitutional policies of defendants college and
its officials. Plaintiffs allege the facts that defendants
enrolled sham students in their classes; the defendants
threatened to discharge plaintiffs for giving grades to sham
students they counted as attending classes; they knew that the
college did not receive federal or state funds for these students
and that no federal crimes were committed; the acts of 
defendants wrongfully extorted the resignations of plaintiffs;
and defendants communicated false charges to the United States
Attorney and made threats of conviction, discharge, and pension
forfeiture.
 Plaintiffs had to allege facts, which if true, show that the
governmental entity deprived them of a constitutionally protected
right and that the deprivation was caused by a governmental
college policy or custom. Kentucky v. Graham, 473 U.S. 159, 166,
87 L. Ed. 2d 114, 122, 105 S. Ct. 3099, 3105 (1985). We find
that plaintiffs have not alleged, nor did they show proof of, the
existence of any custom or college policy or of a causal
connection between such policy or custom and constitutional
injuries. Nor do any of the facts alleged give rise to such a
claim. We find the federal claims to be factually and legally
deficient. See Leahy v. Board of Trustees of Community College
District No. 508, 912 F.2d 917, 922 (7th Cir. 1990) (in the
absence of an allegation of the existence of a municipal policy,
dismissal of section 1983 claim is justified). Defendants were
entitled to summary judgment.
 The judgment of the trial court is affirmed.
 Affirmed.
 TULLY, P.J., and GREIMAN, J., concur.