David E. TIPPETT, Plaintiff–
Appellant,

v.

UNITED STATES, Defendant–Appellee.

No. 00–5133.

United States Court of Appeals,
Federal Circuit.

Dec. 5, 2001.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

Opinion for the court filed by Circuit Judge SCHALL.

Dissenting Opinion filed by Senior Circuit Judge FRIEDMAN.

DECISION

SCHALL, Circuit Judge.

This is the second time this case has been before us. In *Tippett v. United States*, 185 F.3d 1250 (Fed.Cir.1999) (*Tippett I* ), David E. Tippett appealed the decision of the United States Court of Federal Claims that had dismissed his suit seeking back pay and reinstatement in the United States Army. *See Tippett v. United States*, No. 96–308 C (Fed.Cl. Aug. 21, 1997). In *Tippett I*, we held that, in the Court of Federal Claims, Tippett had presented non-frivolous allegations of involuntariness with respect to his discharge from the Army. We therefore vacated the decision of the court dismissing Tippett's suit

and remanded the case for further proceedings. In so doing, we stated that Tippett was "entitled to an evidentiary hearing on the voluntariness issue." 185 F.3d at 1258.

On remand, the Court of Federal Claims found that Tippett was in fact misinformed by his Army counsel as to the consequences of his discharge pursuant to the provisions of Army Regulation ("AR") 635–120, chapter 8. *Tippett v. United States,* No. 96–308 C (Fed.Cl. July 24, 2000). The court determined, however, that the misinformation was not material so as to render Tippett's discharge involuntary. *Id.* It therefore entered judgment in favor of the United States and ordered Tippett's complaint dismissed. *Id.* Tippett now appeals the court's decision and resulting judgment. We *reverse* and *remand.*

## DISCUSSION

### I.

In claiming that his discharge was involuntary, Tippett made two claims. First, he alleged that his second Army lawyer, Lieutenant Colonel Terry E. Bathen, misinformed him by failing to tell him that Department of Defense Form 214, titled "Certificate of Release or Discharge from Active Duty" ("DD Form 214"), would indicate that his discharge, although honorable, was for a moral transgression. *Tippett I,* 185 F.3d at 1255. Second, he alleged that Bathen misinformed him by telling him that, if he received an honorable discharge, he would be entitled to an appointment in the Reserves. *Id.* In fact, before he could become eligible for an appointment in the Reserves, Tippett had to obtain a waiver from the Secretary of the Army. Because of the circumstances of Tippett's discharge, a waiver was required under two separate provisions of AR 135–100: ¶ 1–7c(3) and ¶ 1–7e.

Since it was undisputed that Tippett was not informed that his DD Form 214 would contain a negative notation, we said in *Tippett I* that, as far as what Tippett was told by Bathen, the only issue to be decided on remand was whether Tippett "was incorrectly advised that if he was granted an honorable discharge, he would be entitled to an appointment in the Reserves." *Tippett I,* 185 F.3d at 1258. We also said that there was a second factual issue relating to the voluntariness question that should be addressed on remand. We stated that if the Court of Federal Claims found that Captain Thomas Barth, Tippett's first Army lawyer, "cured any misinformation that Tippett received while Tippett had the option to withdraw his request for discharge, then Tippett's discharge was not based on misinformation and was not involuntary." *Id.*

### II.

On remand, a trial was held. Following the trial, the Court of Federal Claims found that "[n]either Bathen, Barth, nor Tippett had any contemporaneous understanding that Tippett's DD Form 214 would bear the adverse notation 'misconduct, moral, or professional dereliction.'" *Tippett v. United States,* No. 96–308# C, slip op. at 7 (Fed.Cl. July 24, 2000). The court also found that "Bathen was not aware that a chapter 8 discharge made Tippett ineligible for a Reserve appointment without a waiver of approval from the Secretary of the Army. *See* AR 135–100, ¶ 1–7c(3) and ¶ 1–7e. Neither Bathen, Barth, nor any of the Army attorneys who were contacted by Bathen for advice were aware of this ineligibility." *Id.* In short, on remand, the Court of Federal Claims found, as a matter of fact, that Tippett was misinformed about the consequences of be-

ing discharged from the Army under AR 635–120, chapter 8, and that Barth had not corrected the misinformation.

The court concluded, however, that "Bathen's omission of this information was not material." *Id.* at 8. The court stated that "[d]espite the omission by his attorney, [Tippett] knew that his negative [officer efficiency reports] could prevent him from receiving a commission in the Reserves." *Id.* The court pointed out that Bathen had told Tippett that he would face several obstacles in obtaining a commission in the Reserves. The court reasoned that "[t]he advice given [to Tippett] was not misleading and did not materially affect [Tippett's] decision regarding his discharge." *Id.* Based upon its findings, the court ruled that Tippett had failed to establish that his discharge was rendered involuntary by ineffective assistance of counsel. It therefore ordered that his complaint be dismissed.

## III.

■ We review the trial court's conclusions of law *de novo* and its findings of fact for clear error. *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1057 (Fed. Cir.2001). A finding of fact is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landmark Land Co., Inc. v. F.D.I.C.*, 256 F.3d 1365, 1373 (Fed.Cir. 2001). In the Court of Federal Claims, Tippett had the burden of establishing by a preponderance of the evidence that his discharge was involuntary. *See McEntee v. United States*, 30 Fed.Cl. 178, 183 (Fed. Cl.1993).

On appeal, Tippett makes several arguments. The only one we need address, however, is his contention that the evidence at trial established that his dis-

charge was rendered involuntary by Bathen's failure to inform him that he would be ineligible for an appointment in the Reserves unless he obtained a waiver from the Secretary of the Army.

After he was ordered to show cause why he should be retained on active duty, Tippett had three options: (i) submit a resignation in lieu of separation, pursuant to AR 635–120, chapter 4; (ii) request a discharge in lieu of separation, pursuant to AR 635–120, chapter 8; or (iii) in lieu of resignation or discharge, request an appearance before a Board of Inquiry in order to show cause for retention. *See Tippett I*, 185 F.3d at 1252. After he eliminated (i) as an option, Tippett had to decide between (ii) and (iii). Tippett states that the evidence shows that, at the time he was deciding whether to accept a discharge under chapter 8 or to stand before the Board of Inquiry, he made it clear that his most important consideration was being able to enter the Reserves after his discharge. Tippett also states that the evidence shows the following: if he had known that his choice was between (i) being discharged under AR 635–120, chapter 8 (and having to seek a waiver in order to be eligible for an appointment in the Reserves), and (ii) contesting his separation before the Board of Inquiry (and, if successful, not having to obtain a waiver in order to be eligible for a Reserve appointment), he would have chosen the latter course. Tippett argues that his discharge was involuntary because the incorrect information he received from his Army lawyer led him to choose a course of action that he would not have chosen if he had received correct information. *See Covington v. Dep't of Health & Human Serv.*, 750 F.2d 937, 942 (Fed.Cir.1984) ("The misleading information can be negligently or even innocently provided; if the employee materially relies on the misinformation to

his detriment, his retirement is considered involuntary.").

■ Having carefully reviewed the record, we conclude that Tippett established by a preponderance of the evidence that his discharge was involuntary. The record clearly shows that, in early 1990, Tippett was preparing fully for his appearance before the Board of Inquiry. *See* May 23, 1990 sworn statement of Tippett, page 10; Trial Transcript, pages 133–134, 197–199. The record further clearly shows that it was only after Tippett was informed (incorrectly) that a discharge under AR 635–100, chapter 8, would not be an impediment to his obtaining an appointment in the Reserves that he relinquished his right to proceed before the Board of Inquiry. *See* Trial Transcript, pages 138–139, 218–220, 230–231. In short, the misinformation that Tippett received led him to relinquish his right to proceed before the Board of Inquiry, a course of action that he had been intent on pursuing because of his paramount concern to obtain an appointment in the Reserves. Under these circumstances, we have no difficulty concluding that, in the Court of Federal Claims, Tippett showed by a preponderance of the evidence that he "materially" relied "to his detriment," *Covington* 750 F.2d at 942, on the misinformation he received from his lawyer. Accordingly, Tippett is entitled to relief.

■ "[A] member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a). An officer's right to pay under section 204 continues "until the officer is properly separated from the service." *Tippett I*, 185 F.3d at 1255. Under the Tucker Act, the Court of Federal Claims "may, as an incident of and collateral to any [judgment which it has power to render], issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2); *See James v. Caldera*, 159 F.3d 573, 586 (Fed.Cir.1998). An officer who has been improperly and involuntarily discharged is entitled to back pay calculated in accordance with law and reinstatement from the date of his discharge. *See Adkins v. United States*, 68 F.3d 1317, 1327 (Fed.Cir.1995).

Accordingly, the relief to which Tippett is entitled is (i) cancellation of his discharge; (ii) reinstatement in the Army at the grade of captain as of the date of his discharge; (iii) correction of his records to reflect active duty service up to the date of reinstatement; (iv) back pay from the date of his discharge to reinstatement (less appropriate offsets); and (v) such other relief as is appropriate.

For the foregoing reasons, the decision of the Court of Federal Claims is reversed. The case is remanded to the court for further proceedings consistent with this opinion.

No costs.

FRIEDMAN, Senior Circuit Judge, dissenting.

I would affirm. In my view, Tippett has failed to establish an essential element of his involuntary discharge claim, namely, that had he been informed about the adverse consequences of a discharge upon his ability to obtain a Reserve commission, he instead would have chosen to appear before a Board of Inquiry.

I agree with the court that in connection with his discharge, Tippett was not informed either that the words "Misconduct, Moral or Professional Dereliction" would appear on his Department of the Army Form 214 in Block 28, under "Narrative

Reason for Separation" or that his discharge under such circumstances would preclude his obtaining a commission in the Reserves unless the Secretary of the Army waived that prohibition. I also agree that the record supports the Court of Federal Claims' finding that Tippett was not promised or assured that, if he received an honorable discharge, he could and would obtain a Reserve commission.

In our previous opinion we stated:

An otherwise voluntary resignation or request for discharge is rendered involuntary if it ... results from misrepresentation or deception on the part of government officers.... Misrepresentation can be caused by providing misleading information or by failing to provide relevant information.... Information is considered misleading if a reasonable person would have been misled by the representation.... "[I]f the employee materially relies on the misinformation to his detriment, his retirement is considered involuntary."

*Tippett v. United States,* 185 F.3d 1250, 1255 (Fed.Cir.1999) (citations omitted).

The misrepresentation requirement of the standard has been satisfied here. The critical question is whether Tippett has shown that he "materially relie[d] on the misinformation to his detriment." I do not think he has.

When Tippett applied for his discharge, he faced the following situation:

Following receipt of his adverse Officer Efficiency Report, Tippett was ordered to show cause why he should be retained on active duty. The order informed him that he had three options: (1) resigning his commission, (2) requesting a discharge, or (3) proceeding before a Board of Inquiry to show cause for retention. He discussed his situation with his military lawyer, who told him that the command would recommend an honorable discharge if he voluntarily terminated his active military service. Before Tippett was so told, his endeavors were directed toward the Board of Inquiry proceeding. Thereafter, his concern was over the differing consequences of a resignation and a discharge upon his chances of obtaining a Reserve commission.

There is no contemporaneous evidence that Tippett ever told his military lawyers (or anyone else) that unless it appeared that he would receive a commission in the Reserves, he would prefer to go before the Board of Inquiry. As a regular Army commissioned officer with more than 10 years of active duty, Tippett certainly was aware of the serious long-term consequences of receiving anything other than an honorable discharge. He was also aware that the Board of Inquiry was provided to determine whether to retain him. If the Board decided to remove him (which he must have realized was likely), there was a high probability that it would give him something other than an honorable discharge.

It is most unlikely that someone in Tippett's position would have assumed that risk, with only a slim chance of obtaining a Reserve commission. Although Tippett greatly wanted such a commission, there is no reason to believe that he valued that result more than he did an honorable discharge. Because there is no contemporaneous evidence that despite that risk, Tippett would have chosen to appear before the Board had he been correctly informed, he has not demonstrated that he "materially relie[d] on the misinformation to his detriment."