UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

ROBERT  D. O'BRIEN,
          Appellant,

      v.

DEPARTMENT OF THE ARMY,
          Agency.

DOCKET NUMBER
AT-0752-14-0640-B-1

DATE: February 23, 2016

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Adam Jerome Conti, Atlanta, Georgia, for the appellant.

Christopher M. Kenny, Fort Gordon, Georgia, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the remand initial decision, which reversed the appellant's constructive removal.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2 The appellant occupied a GS-13 Supervisory Security Specialist position at the Dwight David Eisenhower Army Medical Center, which was designated as a law enforcement officer position and was subject to random drug testing. *O'Brien v. Department of the Army*, MSPB Docket No. AT-0752-14-0640-I-1, Initial Appeal File (IAF), Tab 1. A urine sample that he provided on February 5, 2014, was certified by an agency Medical Review Officer (MRO) as testing positive for codeine and morphine. *Id*. The appellant maintained that he had codeine in his system because he had taken prescription cough syrup with codeine a few days before the test and that codeine metabolized into morphine. *Id*. He indicated during the investigation of the positive test result that he did not submit his prescription for cough syrup with codeine because he had been told that the agency would not accept a prescription that was more than 6 months old and his prescription was written more than 6 months prior to the drug test. IAF, Tab 4 at 28. Subsequently, the appellant became aware that the agency proposed to remove him based on the positive drug test result, and he resigned before receiving the notice of proposed removal. IAF, Tab 9 at 11.

¶3 The appellant filed an appeal, alleging that his supervisor provided inaccurate and misleading information that coerced his resignation. The administrative judge found that the appellant failed to show that his resignation

was the result of coercion, and she dismissed the appeal for lack of jurisdiction. IAF, Tab 12, Initial Decision at 6-8.

¶4        In his petition for review of that decision, the appellant asserted that, on August 22, 2014, based on information that he learned during the August 18, 2014 Board hearing, he telephoned the agency's drug testing laboratory to inquire into the manner that his drug test had been processed. *O'Brien v. Department of the Army*, MSPB Docket No. AT-0752-14-0640-I-1, Petition for Review File, Tab 4 at 7-8. He said that the laboratory asked for copies of his prescriptions regardless of how old they were, and he promptly provided them. *Id*. at 8. On September 2, 2014, he received a copy of a Lab Results Report that reflected negative results for his drug test based on the urine sample that he provided on February 5, 2014. *Id*. at 27. With his petition for review, the appellant provided an affidavit repeating that he did not provide any prescriptions during the investigation of the positive test result because he had been wrongly informed that he could submit only prescriptions that were less than 6 months old. *Id*. at 15. He also provided a copy of the Lab Results Report showing negative results, and a list of his prescriptions showing that he was prescribed guaifenesin/codeine on August 31, 2011. *Id*. at 21, 27. The appellant asked the Board to accept the affidavit, prescription information, and the September 2, 2014 Lab Results Report into the record as new evidence to show that he resigned based on misleading information.

¶5        The Board found that the appellant's new evidence constituted a nonfrivolous allegation[2] of facts that, if proven, could warrant setting aside the drug test carried out without the benefit of that prescription. *O'Brien v. Department of the Army*, MSPB Docket No. AT-0752-14-0640-I-1, Final Order (Feb. 10, 2015). The Board found further that the appellant's assertion that he

---

[2] Nonfrivolous allegations of Board jurisdiction are allegations of fact that, if proven, could establish a prima facie case that the Board has jurisdiction over the matter at issue. *Deines v. Department of Energy*, 98 M.S.P.R. 389, ¶ 11 (2005).

was misled by the agency into failing to submit critical evidence, if proven, may have affected the outcome of the investigation into his positive drug test. Absent the appellant's receiving misleading representation of a rule prohibiting submission of prescriptions that were more than 6 months old, it appears that: (1) he would not have received a positive drug test result; (2) the agency may not have proposed his removal; and (3) he would not have felt pressured to resign. The Board found that that was so, regardless of whether the agency was aware that its statements were misleading. *Id*.; *see Covington v. Department of Health & Human Services*, 750 F.2d 937, 943 (Fed. Cir. 1984). The Board remanded the appeal to the Atlanta Regional Office to afford the appellant an opportunity to prove his allegation of agency misrepresentation.

¶6         Based on the submissions of the parties on remand, the administrative judge found that, although no agency employee misinformed the appellant as to the 6-month rule, his confusion came from the laboratory contracted by the agency to perform the drug test and that, as an agency contractor, its actions can be imputed to the agency. Remand File (RF), Tab 10, Remand Initial Decision (RID) at 5. She found that the contractor's actions created obvious confusion in that once the appellant provided his prescription history to the contractor, it reversed its prior test result. *Id*. Thus, she found that, absent the appellant receiving misleading representation of the 6-month rule, he would not have received a positive drug test result, the agency would not have proposed his removal, and he would not have felt pressured to resign. *Id*.

¶7         In its petition for review of the remand initial decision, the agency asserts that the administrative judge failed to properly weigh the affidavit of its Chief of Pathology and Area Laboratory Services. Remand Petition for Review (RPFR) File, Tab 1.[3] In the affidavit, the Chief of Pathology explained that legitimate use

---

[3] In the remand initial decision, the administrative judge ordered interim relief. RID at 7. Attached to the agency's petition for review is certification by the Supervisory Human Resources Specialist that the appellant has been placed on an interim

of a prescription drug is commonly understood to mean use of a prescription medication pursuant to physician supervision and in accordance with a physician's direction. *Id.* The agency relies on regulations promulgated by the Drug Enforcement Administration (DEA) and Georgia state law to set out the time limits for refilling prescriptions for controlled substances such as codeine, morphine, and other opiates. DEA limits refilling controlled substances to five refills or 6 months, whichever occurs first, and may be dispensed for 6 months from the date of issuance of the prescription. Also, Georgia law prohibits dispensing controlled substances after 6 months from the date of prescription. The agency argues that, given the Federal and state constraints, any possible use of a scheduled substance by the appellant outside of 6 months from the date of the prescription could not logically be in accordance with physician supervision and at a physician's direction, and representing that a rule prohibiting submission of prescriptions that were more than 6 months old did not constitute misinformation.

¶8      The agency's assertion on petition for review of the remand initial decision is unavailing. The Federal and state statutes and regulations supplied by the agency provide time limitations on dispensing and refilling prescriptions for controlled substances. Here, there is no assertion that the prescription that the appellant provided the contractor was in violation of any of these laws and regulations. Nothing in the record contradicts the appellant's statement that the prescription that he provided to the contractor was written by a physician and properly dispensed for the cough that he had at a time that he was recovering from pneumonia in 2011. Further, nothing contradicts his statement that he did

---

appointment in the GS-13 position of Supervisory Security Specialist, effective September 9, 2015, the date of the remand initial decision. RPFR File, Tab 1 at 9. Also attached is a memorandum from the Commander of the Dwight David Eisenhower Army Medical Center indicating that it was his determination that the appellant's return or presence in the workplace would be unduly disruptive and that therefore the appellant had been placed on paid administrative leave for the period from September 9, 2015, until the Board issues a final decision in this appeal. *Id.* at 10.

not finish the cough syrup properly dispensed under Federal and state law while he had pneumonia, and he retained what remained. The agency provided no evidence or argument to show that retaining the unused cough syrup was a violation of statute or regulation. Further, nothing contradicts the appellant's statement that he used the cough syrup with codeine to quell an uncontrolled cough, the symptom for which it was prescribed by his physician.

¶9 In his affidavit, the Chief of Pathology and Area Laboratory Services also indicated that when a collected urine sample tests positive for a controlled substance that may be lawfully prescribed and used, a determination must be made whether the use of such controlled substances is legitimate. RF, Tab 8 at 361. It appears that in this case, such a determination is made by a MRO employed by the agency's drug testing service. It was an MRO from the drug testing service who, in the process of determining whether the appellant legitimately used the controlled substance that showed up in his urine sample, erroneously informed the appellant that a prescription more than 6 months old would not be considered. Absent such a prescription, the MRO reported a positive drug test. PFR File, Tab 4 at 19. However, once an MRO[4] received the appellant's prescription for cough syrup with codeine, he determined that the appellant's use of the controlled substances codeine was legitimate, as reflected in the Lab Results Report that he issued showing negative results. *Id*. at 27. We find that the MRO's erroneous statement that the drug testing service would not consider a prescription that was more than 6 months old was misleading information that rendered the appellant's resignation involuntary.

¶10 The touchstone of the analysis of whether a retirement or resignation is voluntary is whether the employee made an informed choice. *Baldwin v.*

---

[4] For unexplained reasons, the MRO who conducted the initial determination whether the appellant's used of codeine was legitimate was a different MRO from the one who conducted that determination after the appellant supplied his prescription for cough syrup with codeine. PFR File, Tab 4 at 19, 27. Each of these individuals identifies himself as an MRO. *Id*.

*Department of Veterans Affairs*, 111 M.S.P.R. 586, ¶ 16 (2009).  A decision made "with blinders on," based on misinformation or lack of information, cannot be binding as a matter of fundamental fairness and due process.  *Id*.  An agency must provide information that is not only correct in nature but adequate in scope to allow an employee to make an informed decision.  *Id*.  This includes an obligation to correct any erroneous information on which it has reason to know an employee is relying.  *Id*.

¶11        In short, the statement of the MRO who conducted the first determination whether the appellant's use of cough syrup with codeine was legitimate, gave the appellant erroneous and misleading information that prevented the appellant from making an informed decision about whether to resign.  The agency violated its duty in this case to assure that the MRO provided information that was correct in nature and adequate in scope regarding what prescriptions would be considered to allow the appellant to make an informed decision about whether to resign.  As noted, once the appellant submitted his prescription for cough syrup with codeine, an MRO issued a negative drug test determination.  There is no reason to believe that the appellant would have resigned if he had known at the time of the initial determination that his use of the controlled substance was legitimate.  A decision to retire made with blinders on based on misinformation or lack of information cannot be binding as a matter of fundamental fairness and due process.  *Id*.  The administrative judge properly found that the appellant established by preponderant evidence that his resignation was pressured by the agency's misleading information and thus was involuntary.

¶12        Having found that the Board constructively removed the appellant and that the Board has jurisdiction over this appeal, we further find that the constructive removal must be reversed because the agency effected it without due process of law.  *See Lohf v. U.S. Postal Service*, 71 M.S.P.R. 81, 86 (1996).

**ORDER**

¶13     We ORDER the agency to cancel the appellant's resignation and to restore the appellant effective April 1, 2014. See *Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶14     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶15     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶16     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶17     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING
## YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at title 5 of the U.S. Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.



| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)
    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.