# UNITED STATES OF AMERICA
# MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JACQUITTA DUNCAN, | DOCKET NUMBER |
| Appellant, | DA-0752-16-0358-I-1 |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | DATE: May 25, 2023 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Jacquitta Duncan, Fort Worth, Texas, pro se.

Mary Kate Bird, El Segundo, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member[2]

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

[2] Member Leavitt's name is included in decisions on which the three-member Board completed the voting process prior to his March 1, 2023 departure.

**FINAL ORDER**

¶1 The appellant has filed a petition for review of the initial decision, which dismissed her appeal for lack of jurisdiction, finding that the appellant did not establish that her resignation was involuntary. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the analysis on the appellant's allegation that the agency failed to accommodate her by denying her request to telework, we AFFIRM the initial decision.

**BACKGROUND**

¶2 From September 20, 1992, until her resignation on January 13, 2015, the appellant was employed as a Mechanical Engineer with the Federal Aviation Administration. Initial Appeal File (IAF), Tab 8 at 98, 235; Hearing Recording (HR) (testimony of the appellant). In January 2014, a year prior to her resignation, the appellant was diagnosed with depression, anxiety, chronic stress, and was in a "severe emotional state." IAF, Tab 17 at 60, 64; HR (testimony of the appellant). In March 2014, the appellant requested leave under the Family and Medical Leave Act (FMLA). IAF, Tab 17 at 58-62. In her FMLA request,

the appellant's doctor stated that she could not perform any work during a flare up of her condition, which would occur approximately one to three times a month and that each flare up would last 1 to 4 days. *Id.* at 61. In June 2014, the appellant submitted an updated FMLA request which stated that she would be entirely incapacitated from May 30 through July 31, 2014. *Id.* at 63-66. Then, on July 30, 2014, the appellant submitted letters from two different doctors confirming that she was unable to return to work at the time. IAF, Tab 19 at 20-21. Additionally, one of the appellant's doctors recommended that the agency provide her with a reasonable accommodation when she could return to work, specifically, that she be transferred to a different department under a different supervisor and be given full-time telework. *Id.* at 20. Even though the appellant had already used her 12 weeks of FMLA protected leave, the agency granted the appellant leave without pay (LWOP) from August 1 until September 15, 2014, at which time she returned to the office.[3] *Id.* at 22, 26; HR (testimony of the appellant).

¶3    On October 6, 2014, the appellant's second-line supervisor denied her request for reasonable accommodation, explaining that the agency had no obligation to provide her with an accommodation because her medical evidence indicated she could perform the essential functions of her position under a different supervisor. IAF, Tab 19 at 28-29. The agency also reviewed the appellant's request for full-time telework under its policy and the applicable collective bargaining agreement, and denied the request. *Id.* at 31; HR (testimony of first-line supervisor). It explained that most telework agreements in the office were for 1 or 2 days a week because too much time away from the office resulted in an unacceptable impact to the organization and to group/team interaction and performance. IAF, Tab 19 at 31. The agency also noted that the nature of an engineer's work did not lend itself to teleworking more than 2 days a week. *Id.*

---

[3] The agency apparently also approved the appellant's participation in the voluntary leave transfer program. IAF, Tab 19 at 26.

Finally, the agency explained that the appellant was in the process of re-engaging with the office after an extended period of leave, that closer communication with her supervisor was needed to ensure that she timely completed her assignments, and that the appellant's attendance since her return had been inconsistent. *Id.* Accordingly, the agency denied the request for full-time telework. *Id.*

¶4　　On or around December 16, 2014, the appellant provided her second-line supervisor with a letter from her doctor, which stated that the agency's denial of accommodations caused the appellant's further mental deterioration and emotional distress, leaving the appellant "with no other option but to remove herself from the stressor" and "resign from her employment as soon as possible." *Id.* at 32-33, 36. Several days later, on December 22, 2014, the appellant presented a letter to her second-line supervisor, stating: "[I]f I do not receive reasonable accommodations immediately for my serious medical condition (depression and anxiety) please accept this letter as my resignation effective January 13, 2015."[4] *Id.* at 36. She explained that she needed her primary accommodation of reassignment to a different supervisor, or alternatively, full-time telework. *Id.* In response, the second-line supervisor explained that the appellant presented no additional or new information that would support a change in the agency's decision to deny her reasonable accommodation request. *Id.* at 37. Accordingly, the agency processed the appellant's resignation effective January 13, 2015. IAF, Tab 8 at 98.

¶5　　The appellant filed a timely appeal of her resignation to the Board, alleging that it was involuntary due to the agency's failure to accommodate her disability

---

[4] The appellant's original letter provided January 13, 2014, as the resignation date. IAF, Tab 8 at 102. The agency's administrative officer returned the letter, and the appellant corrected the date to January 13, 2015, before the effective date of her resignation. IAF, Tab 19 at 36; HR (testimony of the appellant, testimony of the administrative officer).

and subjecting her to discrimination and retaliation.[5]  IAF, Tab 1 at 6.  The administrative judge found that the appellant made a nonfrivolous allegation of involuntariness, and granted her a jurisdictional hearing.  IAF, Tab 13 at 1-2.

¶6      After holding a hearing, the administrative judge found that the appellant's December 22, 2014 letter constituted her resignation and dismissed the appeal for lack of jurisdiction, finding that the appellant failed to establish that her resignation was involuntary.  IAF, Tab 28, Initial Decision (ID).  The appellant filed a timely petition for review.  Petition for Review (PFR) File, Tab 1.  The agency responded to the appellant's petition, and the appellant replied to the agency's submission.  PFR File, Tabs 3-4.

## ANALYSIS

### The appellant's December 22, 2014 letter was appropriately interpreted as a resignation letter.

¶7      Before the administrative judge, the appellant argued that the December 22, 2014 letter was not, in fact, a resignation letter, but that it was "merely an attempt to be accommodated."  IAF, Tab 10 at 7.  In the initial decision, the administrative judge determined that the letter expressed the appellant's "definite and unequivocal intent to resign" if her accommodations were denied.  ID at 18. As the agency did not give the appellant her requested accommodations, the administrative judge found that the agency was entitled to rely on the letter to effect her resignation.  *Id.*  On review, the appellant reiterates her argument, claiming that her letter was not an "affirmative resignation" but was submitted with the intent to "seek help."  PFR File, Tab 1 at 12.

¶8      We disagree with the appellant's contention that her December 22, 2014 letter was not a resignation letter.  An employee is free to resign at any time, to

---

[5] The appellant filed a formal equal employment opportunity complaint on April 11, 2015, alleging that she was forced to resign.  IAF, Tab 1 at 20.  The agency accepted the complaint for processing and issued a final agency decision on April 6, 2016.  IAF, Tab 7 at 8.  The appellant timely filed her Board appeal within 30 days of her receipt of the final agency decision.  5 C.F.R. § 1201.154(b)(1); IAF, Tab 7 at 4-5, 10.

set the effective date of her resignation, and to have her reasons for resigning entered into her official records. *Balagot v. Department of Defense*, 102 M.S.P.R. 96, ¶ 7 (2006); 5 C.F.R. § 715.202(a). An agency is entitled to rely on an employee's expression of a present intent to resign only when that expression is unequivocal. *Balagot*, 102 M.S.P.R. 96, ¶ 7. In determining whether an employee has effectively resigned, the Board considers the totality of the circumstances. *Id.*

¶9      The Board has held that a conditional resignation may add uncertainty as to whether the statement expresses a present or future intent to resign. *Hammond v. Department of the Navy*, 50 M.S.P.R. 174, 181 (1991). However, we do not find that the appellant's language in the December 22, 2014 letter was uncertain. The appellant plainly conveyed an ultimatum to the agency: grant her requested accommodations or she would resign effective January 13, 2015. IAF, Tab 19 at 36. The inclusion of the effective date of the resignation is further evidence that the appellant intended to resign should her demands not be met. *See McDermott v. Department of Justice*, 82 M.S.P.R. 19, ¶ 10 (1999) (finding that the appellant's letter indicated a definite and unequivocal intent to resign, in part, because it included an effective date for her resignation); *cf. Hammond*, 50 M.S.P.R. at 181 (finding that uncertainty as to the effective date of a conditional resignation may exist if an employee does not specify that the effective date for the resignation will be the date upon which the condition is fulfilled or some other date).

¶10      Additionally, the events leading up to the appellant's resignation confirm that she intended to resign on January 13, 2015, if she did not receive her requested accommodations. As noted, because the appellant initially wrote the wrong year for the effective date of her resignation, the administrative officer returned the letter to her to correct the effective date of her resignation to January 13, 2015, which she did without objection. HR (testimony of the administrative officer, testimony of the appellant); IAF, Tab 19 at 36. Next, the

updated medical documentation provided by the appellant stated that her only option was to resign after her accommodations were not granted. IAF, Tab 19 at 33. Furthermore, the appellant's first-line supervisor discussed the appellant's pending resignation with her and her union representative the day prior to the effective date of her resignation, and there is no evidence in the record that the appellant attempted to withdraw her resignation during this meeting.[6] HR (testimony of the appellant, testimony of the first-line supervisor).

¶11      Finally, the appellant's claim that her resignation was not an "affirmative resignation" because she never met with Human Resources is unpersuasive. PFR File, Tab 1 at 12. The appellant has not identified any support for the proposition that a specific process, such as meeting with an employee of a particular office, is a prerequisite for a resignation to be effective. To the contrary, as noted, an employee may resign at any time. *Balagot*, 102 M.S.P.R. 96, ¶ 7; 5 C.F.R. § 715.202(a). A specific or formalized process is not necessary, as illustrated by the Board's holding in *Robinson v. U.S. Postal Service*, 50 M.S.P.R. 433, 438-39 (1991), that an oral statement to the employee's supervisors was sufficient to constitute a resignation.[7] In any event, the record shows that, contrary to the appellant's assertions, she did meet with the agency's administrative officer on

---

[6] The appellant's first-line supervisor held a meeting with the appellant and her union representative on January 12, 2015. HR (testimony of the appellant, testimony of the first-line supervisor). In that meeting, the first-line supervisor asked the appellant if she still intended to resign. HR (testimony of the appellant, testimony of the first-line supervisor). According to the first-line supervisor, the appellant confirmed that she intended to resign; however, the appellant claims her representative responded that, if the appellant did not receive her accommodations, she would be forced to resign. HR (testimony of the appellant, testimony of the first-line supervisor). In any event, both witnesses testified that resignation was discussed the day prior to the appellant's resignation. HR (testimony of the appellant, testimony of the first-line supervisor).

[7] Similarly, the Board explained in *Sanderson v. Office of Personnel Management*, 72 M.S.P.R. 311, 316 (1996), *aff'd*, 129 F.3d 134 (Fed. Cir. 1997) (Table), that a written resignation is not necessary when an employee's words and actions express a clear intent to resign, further confirming that the Board has not required any formalized process for an agency to accept and process an employee's resignation.

the day of her resignation, and there is no evidence in the record that suggests the appellant, during this meeting, or at any other time, expressed a desire to withdraw her resignation.[8] HR (testimony of the administrative officer, testimony of the appellant, testimony of the union representative).

¶12  In sum, we agree with the administrative judge that the agency acted properly in construing the appellant's December 22, 2014 letter as a resignation letter and properly relied on the letter in effectuating the appellant's resignation on January 13, 2015.

The appellant failed to establish that her resignation was involuntary.

¶13  An employee-initiated action, such as resignation, is presumed to be voluntary, and thus outside the Board's jurisdiction, unless the employee presents sufficient evidence to establish that the action was obtained through duress or coercion or shows that a reasonable person would have been misled by the agency. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010); *see Staats v. U.S. Postal Service*, 99 F.3d 1120, 1123-24 (Fed. Cir. 1996) (stating that a decision to resign or retire is presumed to be voluntary and thus outside of the Board's jurisdiction). The touchstone of the voluntariness analysis is whether, considering the totality of the circumstances, factors operated on the employee's decision-making process that deprived her of freedom of choice. *Searcy*, 114 M.S.P.R. 281, ¶ 12. Our reviewing court has made clear that "the doctrine of coercive involuntariness is a narrow one."[9] *Staats*, 99 F.3d at 1124. The fact that

---

[8] During the January 13, 2015 meeting, the administrative officer claims that she asked the appellant whether she wanted to resign and the appellant confirmed that she did. HR (testimony of administrative officer). In their testimony, the appellant and her union representative confirmed that they met with the administrative officer on January 13, 2015, but only recall discussing her leave balances. HR (testimony of the administrative officer, testimony of the appellant, testimony of the union representative).

[9] Although the employee in *Staats* claimed that his retirement from the U.S. Postal Service was involuntary, the court makes clear that its discussion regarding the

an employee is faced with an unpleasant situation or that her choice is limited to two unattractive options does not make the employee's decision any less voluntary. *Id.* However, intolerable working conditions may render an action involuntary if the employee demonstrates that the employer or agency engaged in a course of action that made working conditions so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign. *Searcy*, 114 M.S.P.R. 281, ¶ 12.

¶14    When, as in this case, an appellant claims that the agency coerced her resignation by engaging in acts of discrimination, including harassment and failing to reasonably accommodate her disability, and retaliated against her for protected activity, PFR File, Tab 1 at 8-12; HR (testimony of the appellant); IAF, Tab 1 at 6, the Board will consider those claims only insofar as those allegations relate to the issue of voluntariness and not whether they would establish discrimination or reprisal as an affirmative defense. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 10, *aff'd*, 469 F. App'x 852 (2011). That is, evidence of discrimination may be considered only in terms of the standard for voluntariness in a particular situation—not whether such evidence meets the test for proof of discrimination or reprisal established under Title VII. *Markon v. Department of State*, 71 M.S.P.R. 574, 578 (1996). Thus, evidence of discrimination goes to the ultimate question of coercion—whether under all of the circumstances working conditions were made so difficult by the agency that a reasonable person in the employee's position would have felt compelled to resign. *Id.* at 577.

---

purported involuntariness of the retirement at issue in that case applies to allegations of an involuntary resignation as well. *Staats*, 99 F.3d at 1122-24.

> *The appellant failed to show that the denial of her reasonable accommodation request of assignment to a new supervisor created working conditions so intolerable that a reasonable person would have felt compelled to resign.*

¶15    The appellant asserts that the agency created intolerable working conditions and thus coerced her resignation by denying her reasonable accommodation requests "to telework . . . and/or be reassigned" to a different supervisor.  IAF, Tab 19 at 36.  However, an agency is not obligated to reassign an employee to a different supervisor as a reasonable accommodation.[10]  *See Alden v. Department of Veterans Affairs*, EEOC Appeal No. 0120080620, 2011 WL 2515256, *5 (June 16, 2011) (stating that an employer does not have to provide an employee with a new supervisor as a reasonable accommodation).[11]  Additionally, while the appellant may have found it difficult working with her assigned supervisor, an employee is not guaranteed a stress-free working environment.  *Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000).  Dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant

---

[10] We acknowledge that the issue of reassignment to a new supervisor as a reasonable accommodation is not presented in this case as an affirmative defense to an adverse action, but rather in support of the appellant's claim of an involuntary resignation based on intolerable working conditions.  Nonetheless, it bears noting that the Board generally defers to the Equal Employment Opportunity Commission (EEOC) on issues of substantive discrimination law, unless EEOC's decision rests on civil service law for its support or is so unreasonable that it amounts to a violation of civil service law.  *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 40.  This case does not involve either exception.

[11] While assignment to a different supervisor is not required, reassignment to a vacant position is an accommodation specifically listed in the Americans with Disabilities Act.  Before considering reassignment as a reasonable accommodation, employers should first consider those accommodations that would enable an employee to remain in his/her current position.  Reassignment is the reasonable accommodation of last resort and is required only after it has been determined that:  (1) there are no effective accommodations that will enable the employee to perform the essential functions of his/her current position, or (2) all other reasonable accommodations would impose an undue hardship.  *See* EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act (Oct. 17, 2002) (citing 29 C.F.R. pt. 1630 app. § 1630.2(o) (1997); S. Rep. No. 101-116, at 31 (1989); H.R. Rep. No. 101-485, pt. 2, at 63 (1990)).

working conditions are generally not so intolerable as to compel a reasonable person to resign. *Id.*

¶16 Moreover, the appellant's decision to resign was not a rash one. She submitted her resignation letter on December 22, 2014, with the effective date of January 13, 2015. IAF, Tab 19 at 36. Thus, she had 22 days to reconsider and withdraw her resignation, but she did not do so. This opportunity to reflect on her resignation cuts against a finding of involuntariness. *See Lamb v. U.S. Postal Service*, 46 M.S.P.R. 470, 476-77 (1990) (finding that a resignation was not coerced when, in part, the appellant had ample opportunity to reflect on the consequences of his resignation and to make a decision).

> *We modify the initial decision to find that, even if the agency failed to accommodate the appellant when it denied her request for full-time telework, the appellant ultimately failed to show that the agency created working conditions so intolerable that a reasonable person would have felt compelled to resign.*

¶17 The appellant also argues that the denial of her accommodation request for full-time telework created intolerable working conditions that would have compelled a reasonable person to resign. IAF, Tab 19 at 36; PFR File, Tab 1 at 7-8. We are not persuaded by the appellant's argument. A resignation may be an involuntary action within the Board's jurisdiction if an agency improperly denied an employee's request for a reasonable accommodation of a medical condition. *See, e.g.*, *Hosozawa v. Department of Veterans Affairs*, 113 M.S.P.R. 110, ¶ 7 (2010). However, an agency's failure to accommodate an eligible employee is simply a factor to be considered in assessing whether a resignation was involuntary. *Brown v. U.S. Postal Service*, 115 M.S.P.R. 609, ¶ 16, *aff'd*, 469 F. App'x 852 (Fed. Cir. 2011). The Board examines the totality of the circumstances by an objective standard to determine voluntariness and does not rely on the employee's purely subjective evaluation. *Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 22 (2004).

¶18     As an initial matter, we find that the agency's explanation for denying the appellant a reasonable accommodation in denying her request for full-time telework to be unpersuasive.  As a Mechanical Engineer, the appellant was responsible for providing support to mechanical systems in various agency facilities.  HR (testimony of the appellant).  Specifically, the appellant created blueprint designs to upgrade or replace mechanical systems that would be bid on by contractors, and then she assisted in overseeing the completion of these projects.  *Id.*  The appellant was part of a team of engineers, which included engineers in other fields, such as structural and electrical engineers.  *Id.*  The agency denied her request for telework by explaining that full-time telework was not conducive to the position of Mechanical Engineer because "the lack of face-to-face conversation can diminish the group/team interaction and organizational performance" and that "many of [the] job tasks are not easily quantifiable and contact with other employees and customers is not predictable." IAF, Tab 19 at 31.  As set forth above, the agency also explained that most telework agreements in the office were for 1 or 2 days a week because too much time away from the office resulted in an unacceptable impact to the organization and to group/team interaction and performance.  *Id.*

¶19     The Equal Employment Opportunity Commission (EEOC) has found telework to be a well-established reasonable accommodation.  U.S. Equal Employment Opportunity Commission, *Work at Home/Telework as a Reasonable Accommodation*, ¶ 4, http://www.eeoc.gov/facts/telework.html.[12]  Moreover, an

---

[12] Although EEOC's guidance does not have the force of law and therefore does not warrant deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), it is nonetheless "entitled to respect" under *Skidmore v. Swift and Co.*, 323 U.S. 134 (1944), to the extent that its interpretation of the statute it administers has the "power to persuade."  *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore*, 323 U.S. 134). We find EEOC's interpretation of the Americans with Disabilities Act persuasive and therefore entitled to *Skidmore* deference.  *See Solamon v. Department of Commerce*, 119 M.S.P.R. 1, ¶ 9 (2012) (granting *Skidmore* deference to OPM advisory opinion).

agency is not permitted to rely upon its own policies for telework in denying an accommodation. The agency has not shown that the appellant would have been unable to perform the essential duties of her position at home. The EEOC's guidance states that "[a]n employer should not . . . deny a request to work at home as a reasonable accommodation solely because a job involves some contact and coordination with other employees." *Id.*

¶20        Notwithstanding the agency's unpersuasive analysis in this regard, the appellant has not shown that this rendered her working conditions so intolerable that a reasonable person in her position would have felt compelled to resign.[13] *See Vitale v. Department of Veterans Affairs*, 107 M.S.P.R. 501, ¶ 26 (2007) (finding that, although an agency official may have caused the appellant apprehension and exacerbation of his medical ailments, the appellant failed to establish that his working conditions were so intolerable that a reasonable person in his position would have felt compelled to retire).

> *The appellant failed to show that other agency actions created working conditions so intolerable that a reasonable person would have been compelled to resign.*

¶21        The administrative judge correctly found that, although the appellant subjectively believed that the agency's actions were hostile, harassing, discriminatory, and retaliatory, there was no objective evidence that the agency's actions rendered the appellant's working conditions so intolerable that a reasonable person in her position would have felt compelled to resign. ID at 19-22. The appellant complained of various issues that occurred over approximately a 2-year period, including being placed on leave restriction, being charged absence without leave (AWOL), having her request for LWOP denied, being threatened with disciplinary action, being improperly investigated, and

---

[13] The appellant argues on review that the agency improperly questioned her medical evidence. PFR File, Tab 1 at 7-8. As the sufficiency of the appellant's medical evidence does not impact our findings, we see no need to address whether the agency improperly questioned the evidence.

having her first-line supervisor address her in a rude, inconsiderate and condescending manner, all of which she claimed constituted harassment.[14] HR (testimony of the appellant); IAF, Tab 19 at 7-15, 30, 34-35, 38.

¶22　　However, as previously stated, an employee is not guaranteed a stress-free working environment, and being unfairly criticized, or unpleasant working conditions are generally not considered to be so intolerable that they would compel a reasonable person to resign. *Miller*, 85 M.S.P.R. 310, ¶ 32. Thus, we agree with the administrative judge that, while the conditions the appellant describes were no doubt unpleasant for her, they do not reach the high threshold for finding her working conditions intolerable. ID at 21-22.

¶23　　Further, as correctly noted by the administrative judge, the appellant had several options available to her to fight the contested agency actions, including filing an equal employment opportunity (EEO) complaint or a grievance. ID at 20; *see Axsom v. Department of Veterans Affairs*, 110 M.S.P.R. 605, ¶ 17 (2009). The appellant was well aware of these options, as she had filed several EEO complaints. IAF, Tab 8 at 65, 71. To the extent that the appellant argues that she was forced to resign because her numerous other complaints had not stopped the alleged mistreatment, this is an unpersuasive position as it does not change the fact that the mechanisms for her to dispute agency actions still existed, that the appellant was aware of these mechanisms, and that she knew how to use these mechanisms. However, instead of choosing one these options, the appellant elected to resign.

¶24　　Also, as previously explained, the appellant's decision to resign was not rash, as she had 22 days to reconsider and withdraw her resignation, but did not do so. This further weighs against finding her decision was involuntary. *See Lamb*, 46 M.S.P.R. at 476-77.

---

[14] While the specific examples listed occurred over a 2-year period, the appellant also claims that her relationship with her first-line supervisor was "not without complaint" for the entire 13-year working relationship. IAF, Tab 19 at 30.

¶25    Additionally, on review the appellant asserts that the administrative judge should have applied the reasonable person standard considering her medical conditions, i.e., would a reasonable person with the appellant's medical conditions have felt compelled to resign.[15] PFR File, Tab 1 at 2-3. The appellant does not cite any relevant legal authority supporting this interpretation of the law.[16] *Id.* Further, it is well established that the reasonable person test must be applied using an objective standard rather than by considering the employee's purely subjective evaluation. *Coufal*, 98 M.S.P.R. 31, ¶ 22; *see Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶ 9 (1999); *see also Markon*, 71 M.S.P.R. at 578. Accordingly, consistent with Board precedent, we agree with the administrative judge that the appellant not shown that her working conditions were so intolerable that a reasonable person would be compelled to resign. ID at 21-22.

---

[15] We base this interpretation of the appellant's argument on her reference to criminal and tort law, which both contain a doctrine that an individual takes his victim as he finds them, also known as the eggshell skull doctrine. *Figueroa-Torres v. Toledo-Davila*, 232 F.3d 270, 275-76 (1st Cir. 2000) (analyzing the different circuits' application of the eggshell skull doctrine in tort law); *Brackett v. Peters*, 11 F.3d 78, 81 (7th Cir. 1993) (finding that "in criminal law, as in tort law, the injurer takes his victim as he finds him"). However, to the extent the appellant argues that the administrative judge did not recognize or acknowledge her medical conditions, we find this to be an incorrect characterization, as the administrative judge comprehensively addressed the appellant's medical conditions in the initial decision. ID at 3-16.

[16] In support of her argument that the administrative judge erred by applying the reasonable person standard, the appellant cites to *Portner v. Department of Justic*e, 119 M.S.P.R. 365 (2013), *overruled on other grounds by Singh v. U.S. Postal Service*, 2022 MSPB 15, which addressed an appellant's medical condition as a mitigating factor in assessing the penalty in an adverse action appeal. PFR File, Tab 1 at 2-3; *Portner*, 119 M.S.P.R. 365, ¶¶ 17, 22. The appellant has not explained how that case, dealing with the consideration of an employee's medical condition in determining the reasonableness of the penalty for an act of misconduct, has any bearing on the issue of the voluntariness of her resignation.

*The appellant failed to establish that her resignation was involuntary based upon misinformation or deception by the agency.*

¶26        A resignation is involuntary if, for example, the agency made misleading statements upon which the employee reasonably relied to her detriment. *Wallendorf v. Department of the Treasury*, 102 M.S.P.R. 59, ¶ 6 (2006). "A decision made 'with blinders on,' based on misinformation or a lack of information, cannot be binding as a matter of fundamental fairness and due process." *Covington v. Department of Health and Human Services*, 750 F.2d 937, 943 (Fed. Cir. 1984). The agency need not have been aware that its statements were misleading, but may instead have provided them negligently or innocently. *Id.* at 942.

¶27        On review, the appellant claims that the agency provided her with misinformation about whether it convened a reasonable accommodation team (ReAcT) to review her reasonable accommodation request.[17]  PFR File, Tab 1 at 3-7. Specifically, the appellant asserts that the agency misled her to believe that it was reviewing her reasonable accommodation request in accordance with its established procedures and, had she known it was not, she "would have made different and more informed decisions . . . which would have impacted [the] present conditions of this case."[18]  *Id.* at 6. In support of her argument, the appellant cites to allegedly contradictory testimony from agency witnesses made

---

[17]  A ReAcT consisted of representatives from the agency's Civil Rights Office, Regional Counsel, the Medical Department, and Labor Relations.  HR (testimony of the second-line supervisor).

[18]  The appellant did not raise the argument that her resignation was based on misinformation below.  The Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016).  However, we have considered the appellant's arguments on review because it implicates the Board's jurisdiction, an issue that is always before the Board and may be raised by any party or sua sponte by the Board at any time during a Board proceeding. *Lovoy v. Department of Health and Human Services*, 94 M.S.P.R. 571, ¶ 30 (2003).

during the processing of her appeal regarding whether a ReAcT was assembled and who was involved. *Id.* at 4-7.

¶28    As an initial matter, the record is not clear as to whether the testimony from the agency's witnesses was in fact contradictory.[19] Nevertheless, in order to show that her resignation was involuntary as a result of misrepresentation, the appellant has to show that she reasonably relied upon the agency's misleading statements to her detriment. *Wallendorf*, 102 M.S.P.R. 59, ¶ 6. We do not find that the appellant met this burden.

¶29    It appears that the agency provided two letters to the appellant specifically regarding her reasonable accommodation request, and neither letter mentioned that a ReAcT would be convened to review that request. IAF, Tab 19 at 17, 24-25. Furthermore, the agency's denial of the appellant's reasonable accommodation request does not state that a ReAcT was involved in the decision-making process. *Id.* at 28-29. Indeed, contrary to the appellant's assertion, the agency was under no obligation to convene a ReAcT, as the agency's reasonable accommodation policy provides that the first-line supervisor is the decision maker for reasonable accommodation requests, and explains that he or she "may" consult with the other resources, including human resources,

---

[19] The appellant points to allegedly contradictory testimony by agency witnesses as to whether a ReAcT was convened once, twice, or at all, to review her request for accommodation. PFR File, Tab 1 at 4-7. On review, the appellant cites to numerous depositions of witnesses to support a claim that these individuals made contradictory statements; however, those deposition transcripts were not introduced into the record before the Board. *Id.* Accordingly, we are unable to assess the accuracy of the appellant's claims, and thus, the appellant has not established that the witnesses testified in an inconsistent fashion. In reviewing the hearing testimony, we do not find the agency's statements to be inconsistent. The second-line supervisor testified that she convened a ReAcT twice to review the appellant's request for accommodation. HR (testimony of the second-line supervisor). At least one individual confirmed that a ReAcT had been convened, and no individual affirmatively denied that the ReAcT was convened a second time. HR (testimony of EEO specialist, testimony of labor relations specialist); IAF, Tab 25 at 17-18, 21-22. Thus, we do not find the hearing testimony to be inconsistent. PFR File, Tab 1 at 4-7.

legal, and medical personnel. IAF, Tab 8 at 209. In fact, the agency's reasonable accommodation policy has no provisions referencing a ReAcT. *Id.* at 206-17.

¶30    The only document in the record that references ReAcT is an October 15, 2014 email from the appellant's second-line supervisor to the appellant regarding the denial of her reasonable accommodation request, with the subject line "REACT Outcome." IAF, Tab 19 at 30. However, the record only contains the appellant's response and not the original email from the second-line supervisor. *Id.* Furthermore, although the email is titled REACT Outcome, there is nothing in the email itself that indicates that the appellant believed a ReAcT team was convened. *Id.* Indeed, in the email, the appellant places the blame solely on her second-line supervisor for denying her reasonable accommodation request. *Id.*

¶31    Finally, the appellant's December 22, 2014 resignation letter listed the agency's denial of accommodations as the reason for her resignation, not the process by which it came to that decision. *Id.* at 36. Therefore, by the appellant's own admission, she relied on the agency's denial of her accommodations in deciding to resign, not the process by which that decision was made. Thus, we find that the record does not show that the agency provided the appellant with misleading statements that she reasonably relied to her detriment.[20]

¶32    Having carefully considered the record evidence, as set forth above, we find that the appellant resigned from her position effective January 13, 2015, and that

_____

[20] The appellant alleges on review that the agency "constructively suspended" her for more than 14 days when it denied her LWOP request and placed her in an AWOL status from December 22, 2014, to January 8, 2015. PFR File, Tab 1 at 8-9. At no point below did the appellant, who was represented by counsel, allege that she was constructively suspended. Because the record on this issue was not developed in this appeal, we decline to address it. However, if the appellant believes that she was constructively suspended, she may file a Board appeal of that matter consistent with the Board's regulations. *See Masdea v. U.S. Postal Service*, 90 M.S.P.R. 556, 560 n.* (2002) (noting that, while the appellant challenged an arbitration decision of the agency removal action, the record reflected that there was also a suspension which may be appealable to the Board, and directing the appellant to file a new appeal if he wished to pursue an appeal of the suspension).

the appellant has not otherwise met her burden of showing that her resignation was involuntary based on intolerable working conditions or misinformation provided by the agency.

## NOTICE OF APPEAL RIGHTS[21]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court

---

[21] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. <u>5 U.S.C. § 7702</u>(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. <u>5 U.S.C. § 7702</u>(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

(3) **Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[22]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[22] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                             /s/ for
                                    _____
                                    Jennifer Everling
                                    Acting Clerk of the Board
Washington, D.C.