NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARDIC JOHNSON,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

---

2023-1996

---

Petition for review of the Merit Systems Protection Board in No. AT-1221-20-0201-M-1.

---

Decided:  May 21, 2024

---

MARDIC JOHNSON, Lawrenceville, GA, pro se.

CALVIN M. MORROW, Office of General Counsel, United States Merit Systems Protection Board, Washington, DC, for respondent.  Also represented by ALLISON JANE BOYLE, KATHERINE MICHELLE SMITH.

---

Before HUGHES, STOLL, and CUNNINGHAM, *Circuit Judges.*

PER CURIAM.

This case returns to us following a remand decision in *Johnson v. Merit Systems Protection Board*, No. 20-2136 (Fed. Cir. Sept. 26, 2022) (nonprecedential) (*Johnson*). In that case, we affirmed the Merit Systems Protection Board's dismissal of Petitioner Mardic Johnson's whistle-blower claims for lack of jurisdiction, but remanded for the Board to further consider Ms. Johnson's involuntary retirement claim and other alleged wrongdoings by her former employer. For the reasons stated below, we affirm the Board's dismissal of Ms. Johnson's involuntary retirement claim for lack of jurisdiction and remand for the Board to address her remaining claims.

I

A

The *Johnson* opinion provided a detailed recitation of the facts and procedural posture of this case, which we briefly summarize here. Ms. Johnson was employed as an education technician with the Centers for Disease Control (CDC) University in Atlanta, Georgia, until she retired on June 30, 2019. She served as a federal government employee for 34 years. While still employed by the CDC, Ms. Johnson submitted three complaints—two in 2008 and one in 2018—alleging that she was subject to various types of workplace misconduct. All three complaints were subsequently closed, dismissed for failure to state a claim, or denied relief on the merits.

In 2019, after Ms. Johnson had retired, she filed a new complaint with the Office of Special Counsel (OSC), alleging that she was the victim of retaliation and other mistreatment during her tenure at the CDC. Following review, OSC informed Ms. Johnson that it was closing her complaint and that she had the right to file an individual right of action (IRA) appeal with the Merit Systems Protection Board (hereinafter, Board). In her paperwork for the subsequent appeal with the Board, Ms. Johnson indicated that she was filing an IRA appeal, and she also wrote "no choice

but to retire" next to the words "involuntary retirement" on one of the pages. Soon after Ms. Johnson filed the appeal, the administrative judge overseeing the case issued orders directing Ms. Johnson to provide evidence of Board jurisdiction over both her IRA appeal and her "involuntary retirement" claim. After receiving briefing from Ms. Johnson on both jurisdictional questions, the administrative judge dismissed the appeal for lack of jurisdiction. In its opinion, the administrative judge analyzed only the IRA claim, not the involuntary retirement claim.

Ms. Johnson appealed to this court, challenging the administrative judge's dismissal of her IRA claim, as well as the administrative judge's failure to address her involuntary retirement contentions. Regarding Ms. Johnson's challenge of the IRA dismissal, we held that "[b]ecause Ms. Johnson only makes conclusory allegations that the 2008 OSC complaint was a contributing factor to any alleged retaliation, she has failed to put forward non-frivolous allegations sufficient to show Board jurisdiction over her IRA appeal." *Johnson*, slip op. at 9–10. Accordingly, we affirmed the administrative judge's dismissal of the IRA appeal.

In contrast to the IRA affirmance, we agreed with Ms. Johnson that the Board had erroneously failed to address whether it had jurisdiction over Ms. Johnson's involuntary retirement claim. Accordingly, "we vacate[d] the administrative judge's dismissal of Ms. Johnson's appeal as to her constructive termination claim and remand[ed] to the administrative judge to consider this claim." *Johnson*, slip op. at 11. In a footnote at the end of this sentence, we stated, "[i]t appears that Ms. Johnson believes that she has alleged other claims too," and we cited to passages in Ms. Johnson's brief where she alleged that she had been subjected to a "Prohibited Personnel Practice," "promotion denials," "and other adverse actions." *Id.* at 11–12 n.3. Next, we stated that "[w]e express no opinion on whether Ms. Johnson has alleged such claims and leave it for the

administrative judge to determine if it is proper to dismiss each of Ms. Johnson's claims." *Id.*

Finally, *Johnson* addressed a motion that Ms. Johnson submitted to the Federal Circuit while her appeal was pending. In the motion, Ms. Johnson sought "(1) partial summary judgment on her claim for 'economic loss due to agency error on application for immediate retirement' and (2) sanctions against the Board for publishing personally identifiable information." *Johnson*, slip op. at 12. We denied both requests, first stating that "[w]e deny Ms. Johnson's motion for partial summary judgment because the scope of our review is limited to the conclusions of the administrative judge's decision." *Id.* We then stated that "[i]f Ms. Johnson believes that she has stated a claim that entitles her to judgment, then that is an issue to put before the administrative judge first." *Id.* We also denied Ms. Johnson's motion for sanctions against the Department of Health and Human Services (HHS) stating that because "Ms. Johnson's complaints are directed to HHS's conduct before the administrative judge and implicate the Board's rules about redaction of personally identifiable information, the administrative judge is best positioned to determine if sanctions are warranted." *Id.* (internal citation omitted).

B

On remand, the administrative judge issued an order instructing Ms. Johnson to submit evidence showing that she had a non-frivolous allegation regarding her claim of involuntary retirement, which would entitle her to a hearing on whether the Board had jurisdiction over her case. The Board also ordered Ms. Johnson to submit a list of additional purported claims, as referenced by this court in footnote 3 of the *Johnson* opinion. *See Johnson*, slip op. at 11 n.3. The Board's order stated that Ms. Johnson's submissions regarding both issues would be due no later than February 8, 2023. Ms. Johnson later filed a motion for an

extension of time to respond, and the administrative judge granted it, setting the new deadline for submission as on or before February 28, 2023. On February 26, 2023, Ms. Johnson submitted her jurisdictional response briefing.

1

Ms. Johnson's February 26 brief to the Board stated that her argument would be broken up into two parts: "Part I w[ould] cover claims in support of a constructive/involuntary retirement, and Part II w[ould] cover claims for partial summary judgement which are separate from the constructive involuntary retirement." R.F. 47.[1]

Part I of Ms. Johnson's jurisdictional brief argued that her involuntary retirement allegation was supported by ten separate claims. Ms. Johnson alleges that she was subject to the following negative experiences: (1) she erroneously received a notice from human resources (HR) that she was ineligible to compete for a promotion because she had retired, (2) she was instructed to complete work typically handled by employees at the GS-11 level, despite being a GS-7, (3) she was reassigned to an administrative team, which reduced her duties, (4) she experienced pervasive computer problems, (5) she was not provided with a monitor for working from home, which made it difficult to perform spreadsheet work on her small laptop, (6) she was locked out of a training website and could not assist other employees in accessing the site, which led to management reassigning these duties, (7) her request to move to another team—which was made to avoid contact with an allegedly threatening and hostile employee—was denied, (8) she was subject to verbal reprimands and hostility from an

---

[1]    Citations to "R.F. ___" refer to the MSPB Docket No. AT-1221-20-0201-M-1 Remand File, which contains all of the post-*Johnson* proceedings at the Board level.

employee, (9) the same employee scrutinized Ms. Johnson's work and disparaged her to management, and (10) she received a collection notice in 2020, following retirement, for a college course that was allegedly supposed to be paid for by the agency. S.A. 4–5.[2]

Ms. Johnson also argued that she detrimentally relied on misrepresentations made by the agency's HR representatives with respect to her retirement, stating that she was "deceived into believing that it w[ould] take less than 4 months to receive her pension," and that "she was deceived into changing an answer on her application for retirement, which led to a several month delay in receiving her pension." S.A. 8.

Ms. Johnson's Part II briefing contained her "Claim for Partial Summary Judgement," and it addressed her arguments that (1) she was entitled to compensation for economic loss due to a delay in receiving her pension and (2) HHS should be sanctioned for posting personally identifiable information in the case docket. Curiously, both HHS (in its response briefing before the Board) and the administrative judge (in her final order) declined to address these allegations, stating that Ms. Johnson had failed to include her "Part II" arguments in her briefing. *See* Petitioner's Br. 25 (excerpt of HHS response to jurisdictional order); S.A. 9 n.4. This is incorrect. In the February 26 filing, following the 18-page "Part I" briefing, Ms. Johnson included 59 pages of supporting documentation, including a number of email exchanges between Ms. Johnson and her colleagues. At the end of this appendix material, but still within the same 133-page docket filing, it appears that Ms. Johnson accidentally duplicated her 18-page "Part I" brief along with the accompanying appendix.

---

[2]    Citations to "S.A. ___" refer to the Supplemental Appendix submitted by Respondent MSPB in this appeal. *See* ECF No. 11.

Ms. Johnson's Part II brief and accompanying appendix documents appear immediately following that document, on page 97 of the docket filing. Although perhaps situated in an unexpected place, the Part II briefing is readily located with a text search of the file. Additionally, Ms. Johnson identified the exact page number of the Part II argument in her reply brief to the Board. There is no question that Ms. Johnson's Part II briefing was timely submitted in the same February 26 filing as her Part I argument. *See* R.F. at 140. We address the implications of this oversight in III.B., *infra.*

Ms. Johnson's arguments with respect to the economic loss claim of Part II were largely duplicative of her misrepresentation arguments from Part I, although Part II provides a more thorough recitation of the facts underlying Ms. Johnson's allegations. In sum, Ms. Johnson has a court order from a prior divorce requiring her to divide her Thrift Savings Plan benefits between her and her former spouse. The divorce decree does not require her to divide her pension. Ms. Johnson claims she was erroneously instructed by an HR representative to select "yes" instead of "no" on a question in the retirement application that asks about division of pensions due to court orders. Accordingly, Ms. Johnson's retirement application processing was delayed because the application required additional verification on whether there was a court ordered division. Ms. Johnson alleges she was originally told to expect a processing time of three to four months, but due to this error, she was required to wait several additional months before receiving her pension and she was given reduced interim payments during processing as well. Ms. Johnson's brief argues that she is entitled to monetary compensation totaling $10,000 "due to Appellant utilizing credit cards in lieu of not receiving a timely pension." R.F. 141. Ms. Johnson also cites a number of other bureaucratic complications that led to the delay in her pension processing, including

lost or misplaced files and difficulties with a pension deposit.

Ms. Johnson's Part II brief also argues that HHS should be sanctioned for allegedly including personally identifiable information—including social security number, bank account number, and the name of her minor child—in the Agency File it submitted to the MSPB during the 2021 proceedings. A review of the file confirms that it contained this unredacted information.

2

In an Initial Decision dated April 21, 2023, the administrative judge dismissed Ms. Johnson's appeal for lack of jurisdiction. *See Johnson v. Dep't of Health and Human Serv.*, M.S.P.B. No. AT-1221-20-0201-M-1. Ms. Johnson did not file an administrative petition for review; thus, the Initial Decision became the Board's final decision on June 26, 2023.

The administrative judge first addressed Ms. Johnson's allegations about intolerable working conditions. The administrative judge noted that although Ms. Johnson had provided a number of allegations of workplace wrongdoing, "[d]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign." S.A. 7. The administrative judge ultimately concluded that, "[c]onsidering the totality of the circumstances in this appeal, even if the Board accepted the [Ms. Johnson's] allegations as true, they would not constitute a nonfrivolous allegation of involuntariness entitling her to a jurisdictional hearing." *Id.*

The administrative judge next addressed Ms. Johnson's claims about misinformation. Regarding this claim, the administrative judge also found that "[b]ased on the totality of the circumstances . . . [Ms. Johnson] has failed to nonfrivolously allege she detrimentally relied on agency

misinformation when she decided to retire." S.A. 8. The administrative judge noted that, in her review of the record, she "did not locate an email where agency HR gave [Ms. Johnson] an estimate that she would receive her pension within 4 months, nor did [the administrative judge] find guidance to change an answer on her retirement application." S.A. 8. The administrative judge also stated that, even assuming those allegations were true, "there [was] no evidence that the agency HR made misleading statements to [Ms. Johnson] concerning her retirement," noting that the documents provided by Ms. Johnson seem to show that any delay was a result of post-retirement processing errors by Office of Personnel Management (OPM), not agency misrepresentation. S.A. 8.

In a footnote to the concluding paragraph of the order dismissing the appeal for lack of jurisdiction, the administrative judge stated that because "[Ms. Johnson] exclusively addressed her retirement" in her response to the jurisdictional order, the opinion declined to address any further personnel actions that Ms. Johnson had previously alleged. S.A. 9 n.4.

Ms. Johnson appeals the Board's final decision. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(B) and 28 U.S.C. § 1295(a)(9).

## II

In reviewing a final decision of the Board, we must "hold unlawful and set aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Whether the Board lacks jurisdiction is a question of law we review de novo. *Forest v. Merit Sys. Prot. Bd.*, 47 F.3d 409, 410 (Fed. Cir. 1995).

### III

Ms. Johnson presents two issues on appeal: the Board's dismissal of her involuntary retirement claim for lack of jurisdiction, and the administrative judge's failure to address her claim for damages against the agency based on her pension delay and her claim for sanctions against the agency for posting personally identifiable information to the MSPB docket. We address each issue in turn.

### A

The Board has jurisdiction to review an enumerated list of adverse agency actions, including an employee's involuntary removal from their duties. *See* 5 U.S.C. §§ 7512(1), 7513(d). On the other hand, the Board typically does not have jurisdiction to review an employee's decision to retire because this action is "presumed voluntary." *Garcia v. Dep't of Homeland Sec.*, 437 F.3d 1322, 1329 (Fed. Cir. 2006) (en banc) (internal quotation marks and citation omitted). Despite this general rule, the Board may exercise jurisdiction over claims of *involuntary* retirement, because such an action would constitute a constructive removal. *See Shoaf v. Dep't of Agric.*, 260 F.3d 1336, 1340–41 (Fed. Cir. 2001) (stating that an involuntary retirement is "tantamount to forced removal").

A claimant may allege involuntariness in a number of ways, including, as relevant here, that the agency coerced the employee to retire by "creating working conditions so intolerable for the employee that he or she is driven to involuntarily resign or retire" or the agency misinformed or deceived the employee. *Garcia*, 437 F.3d at 1328 (internal quotation marks and citations omitted). "[T]o establish involuntariness on the basis of coercion this court requires an employee to show: (1) the agency effectively imposed the terms of the employee's resignation or retirement; (2) the employee had no realistic alternative but to resign or retire; and (3) the employee's resignation or retirement was the result of improper acts by the agency." *Shoaf*, 260 F.3d

at 1341. For claims based on misinformation, the employee must establish that she materially relied on the misinformation to her detriment. *Covington v. Dep't of Health & Hum. Servs.*, 750 F.2d 937, 942 (Fed. Cir. 1984). Under both theories, the test is an objective one, and the Board must consider the totality of the circumstances in determining whether a reasonable person in the employee's position would have felt compelled to resign or would have been materially misled to her detriment. *Id.*; *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1575 (Fed. Cir. 1983).

In each instance, the claimant has the burden of making "non-frivolous claims of Board jurisdiction," which are "claims that, if proven, establish the Board's jurisdiction." *Garcia*, 437 F.3d at 1344. If the claimant does so, "then the claimant has a right to a hearing." *Id.* "At the hearing, the claimant must prove jurisdiction by a preponderance of the evidence." *Id.*

We agree with the Board that Ms. Johnson has failed to make non-frivolous allegations that her retirement was involuntary, such that it would constitute a constructive removal.

On appeal, Ms. Johnson makes various arguments that the administrative judge failed to address certain allegations of wrongdoing and further that "[t]he cumulative effect of all the adverse actions made [her] work environment toxic and hostile[,] making it extremely difficult to perform her duties." *See* Petitioner's Br. 2–3; 12. With respect to the factual contentions, we disagree and hold that the administrative judge properly considered all of the allegedly intolerable conditions that Ms. Johnson presented in her briefing. With respect to the result of those allegations, we agree with the Board that, although the cumulative effect of the bureaucratic complications and interpersonal disputes that Ms. Johnson experienced might have been unpleasant, they do not rise to the level of making her retirement involuntary. As we have held, "'the doctrine of

coercive involuntariness is a narrow one' requiring that the employee 'satisfy a demanding legal standard.'" *Garcia*, 437 F.3d at 1329 (quoting *Staats v. U.S. Postal Serv.*, 99 F.3d 1120, 1124 (Fed. Cir. 1996)). The record does not persuade us that the agency effectively imposed the terms of Ms. Johnson's retirement, that Ms. Johnson had no realistic alternative but to retire, or that Ms. Johnson's retirement was the result of improper acts by the agency. *See Shoaf*, 260 F.3d at 1341.

Ms. Johnson also argues that the administrative judge erred in its finding that Ms. Johnson failed to make non-frivolous claims of agency misrepresentations. We disagree. Like the administrative judge, we do not find any support in the record for Ms. Johnson's allegations that the agency misrepresented the time it would likely take for her to receive her pension or an erroneous recommendation to change an answer on her retirement application that led to the delay. Further, we agree with the Board that, even assuming that the facts alleged by Ms. Johnson are true, under the objective test, a reasonable employee would not have materially relied on the information to her detriment in making the decision to retire. *See* S.A. 8; *Covington*, 750 F.2d at 942.

In sum, we affirm the Board's dismissal for lack of jurisdiction of Ms. Johnson's involuntary retirement claim because Ms. Johnson failed to non-frivolously allege facts that could have conferred Board jurisdiction if proven.

B

We next turn to the issues that Ms. Johnson presented in her Part II briefing to the Board, for both economic damages due to her pension delay and for sanctions against HHS for its inclusion of personally identifiable information in the Board docket. As we discussed above, the HHS briefing and the administrative judge both failed to consider Ms. Johnson's Part II briefing. Because the Board erred in failing to consider these allegations, we vacate the Board's

conclusion that Ms. Johnson failed to submit briefing and remand for the Board to address her arguments on both issues.

The Administrative Procedure Act's (APA) "arbitrary and capricious" standard provides an agency with broad latitude to act; however, the agency must nevertheless "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). An agency violates this standard when it fails entirely to consider a party's arguments. *See Provisur Techs., Inc. v. Weber, Inc.*, 50 F.4th 117, 123–24 (Fed. Cir. 2022) (finding that the Patent Trial and Appeal Board violated the APA with its failure to address a party's arguments regarding patent invalidity and remanding for further proceedings). Further, under the *Chenery* doctrine, this court may not take the place of the agency by analyzing and disposing of such forgotten issues. *See Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.").

The Board erred in failing to address the arguments found in Ms. Johnson's Part II briefing. Nor can we, without violating the *Chenery* doctrine, assess the merits of Ms. Johnson's claims for the first time on appeal. There are outstanding findings of fact that the Board must make to resolve the claims, including whether Ms. Johnson has exhausted her administrative remedies with OPM or whether HHS included confidential information in a public docket, rather than a confidential one before the Board. *Contra McCarthy v. Merit Sys. Prot. Bd.*, 809 F.3d 1365, 1373 (Fed. Cir. 2016) (holding that, even under *Chenery*, we may "affirm the agency on grounds other than those

relied upon in rendering its decision, when upholding the agency's decision does not depend upon making a determination of fact not previously made by the agency").

IV

We have considered the remainder of Ms. Johnson's arguments and find them unpersuasive. For the reasons set out above, we (1) affirm the Board's dismissal of Ms. Johnson's involuntary retirement claim for lack of jurisdiction and (2) vacate the Board's findings with respect to her claims for economic damages and sanctions and remand for the Board to consider those issues.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

COSTS

Costs to Petitioner.